IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **PRINITA FINLEY,**<br>Individually and on behalf of all others<br>similarly situated,<br><br>**Plaintiff**<br><br>v.<br><br>**PERMANENT GENERAL ASSURANCE CORP. and NATION SAFE DRIVERS SERVICES, INC.,**<br><br>**Defendants.** | Case No. _____<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW, Plaintiff Prinita Finley ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and files this Class Action Complaint against Defendant Permanent General Assurance Corp. ("Permanent General") and Nation Safe Drivers Services, Inc. ("NSD") (collectively referred to herein as "Defendants"). In support thereof, Plaintiff states the following:

## INTRODUCTION

1. This action challenges an improper course of conduct whereby Permanent General automatically and unilaterally assesses non-standard insureds for a highly profitable "motor club" membership. Despite seeking and requesting only certain coverages for her automobile, Plaintiff was automatically assessed by Permanent General for a "motor club" membership with NSD that is completely bogus, yet extremely profitable to Permanent General and NSD. Permanent General added $10 per month to Plaintiff's invoices for the bogus "motor club" membership. That amount was automatically deducted from Plaintiff's bank account each month. Upon information and

1

belief, Permanent General receives at a minimum 70% of this fee with NSD – the company purportedly bearing the risk – receiving 30%. Defendants have been unjustly enriched by retaining this excessive monthly fee.

2. Moreover, while Defendant NSD purportedly had a contract with Plaintiff (which Plaintiff has no recollection of signing and therefore, disputes its validity), that contract was limited to a six-month period coinciding with the first six months of her automobile insurance with Permanent General. When Plaintiff renewed her insurance with Permanent General, the renewal declarations pages said absolutely nothing about a "motor club" with NSD. Yet, Plaintiff continued to be charged the unauthorized $10 "motor club" fee for an additional six months, which NSD wrongfully retained for it and Permanent General's benefit

3. Permanent General's automatic and unilateral practice of deducting unauthorized charges and fees for a bogus, non-existent "motor club" on automobile policies is conducted merely to obtain additional profits for Defendants at the expense of an unknowing and targeted class of Florida consumers. Permanent General's conduct is particularly appalling given the vulnerable nature of the non-standard insureds who are the known target of Permanent General's practices. Permanent General's automatic inclusion and assessment for the bogus "motor club" membership was not a one-time, isolated occurrence. The conduct challenged in this action is not the product of a "rogue agent" or random event, but rather stems from standard practices and form documents devised by Permanent General and NSD's corporate offices. This class action, based upon these standard practices and documents, seeks to provide relief to Florida citizens victimized by these improper business practices.

## PARTIES

4.  Plaintiff Prinita Finley ("Plaintiff") is an adult resident citizen of Cape Canaveral, Florida. Plaintiff purchased a non-standard automobile policy underwritten by Permanent General, Policy Number ▮▮▮▮▮▮▮. Plaintiff's initial contract period was from February 5, 2018 to August 5, 2018, which she renewed for one six-month term covering August 5, 2018 to February 5, 2019. Permanent General was involved in the sale, servicing, billing, and payment collection for this policy. When Plaintiff applied for insurance with Permanent General, she was automatically enrolled in a 24-Hour Emergency Road Service with NSD for a six-month period. Plaintiff was improperly assessed and paid the fictitious "motor club" fees challenged herein for twelve months.

5.  Defendant Permanent General Assurance Corporation is a corporation organized under the laws of Wisconsin with its principal place of business at 2636 Elm Hill Pike, Nashville, TN 37214 and regularly conducts business in this district. It may be served via its registered agent, Chief Financial Officer, at 200 E. Gaines St., Tallahassee, FL 32399-0000. Permanent General Assurance Corporation markets, sells, underwrites, and services non-standard automobile insurance throughout Florida, including Plaintiff's automobile insurance as described in this action. Plaintiff and class members' policies are contracts with Permanent General Assurance Corporation. Defendant Permanent General is the company that assessed the improper "motor club" fees challenged in this action for its benefit and the benefit of NSD.

6.  Defendant Nation Safe Drivers Services, Inc. ("NSD") is a corporation organized under the laws of Florida with its principal place of business at 800 W. Yamato Road, Suite 100, Boca Raton, Florida 33431. It may be served via its registered agent, NRAI Services, Inc., at 1200

South Pine Island Road, Plantation, FL 33324.  Defendant NSD services the "motor club" that Permanent General's insureds were automatically charged to be a member of.

## JURISDICTION AND VENUE

7.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because at least one member of the class is a citizen of a state different from at least one Defendant; there are more than one hundred members of the class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.  All other factual conditions precedent necessary to empower this Court with subject matter and personal jurisdiction have been satisfied.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction in this district and a substantial portion of Defendants' conduct that forms the basis of this action occurred in Florida, including within the boundaries of this district.

9.  This Court has personal jurisdiction over the Defendants because Plaintiff's claims arise out of, among other things, the Defendants conducting, engaging in, and/or carrying on business in Florida and collecting or profiting from the unauthorized fees from Permanent General insureds in Florida.  Defendants also purposefully availed themselves of the opportunity of conducting activities in the State of Florida by marketing their products within the State and intentionally developing relationships with customers within the State.

## FACTUAL BACKGROUND

***Permanent General and "Non-Standard" Auto Insurance.***

10.  Defendant Permanent General underwrites and provides non-standard automobile insurance to customers throughout the United States, including Florida.  Upon information and

belief, a majority of Permanent General's sales are made to customers either online or telephonically.

11.     Since its inception, Permanent General's business model has been to offer as its core product non-standard automobile insurance of minimum limits to comply with state financial responsibility laws. Non-standard automobile insurance is typically procured by those consumers who, due to financial constraints, troubled credit histories, or otherwise, are unable to obtain or afford coverage through standard, more commonly-known carriers.

12.     In late 2012, American Family Insurance acquired PGC Holdings Corp. ("Permanent General Companies") and its subsidiaries, including non-standard auto insurers Permanent General and The General, in a $239 million transaction. Following this acquisition, Permanent General began a widespread, comprehensive, and aggressive marketing strategy to attract a large customer share of the non-standard auto insurance market. These widespread and aggressive marketing efforts included, among other things, high profile television, digital, and billboard advertisements containing visible and recognizable marketing slogans, mascots, jingles, and celebrity endorsements. For example, Permanent General's television commercials advertising their non-standard automobile insurance include a cartoon personality as well as several widely recognized celebrities.

13.     As part of their widespread and aggressive marketing efforts to attract customers of non-standard automobile insurance, Permanent General's radio, internet, television, and billboard advertising emphasizes the availability of low-cost, state-minimum automobile liability coverage with a low, affordable down payment and the availability of convenient monthly premium payments in order to meet the consumer's budgeting needs.

14. Beginning on a date currently unknown to Plaintiff but, going back as far as at least February 2018, Defendants Permanent General and NSD, implemented a wide-spread deceptive scheme to improperly obtain additional revenues from certain targeted and vulnerable consumers in Florida. These practices were deceptively and intentionally conducted to mislead consumers into paying an inflated monthly fee for membership in a "motor club" without an understanding of said "motor club" so that members would not take advantage of any of its purported benefits; thereby creating a windfall in profits for Defendants Permanent General and NSD.

15. Specifically, at least by February 2018, Defendants Permanent General and NSD began the wide-spread and systematic practice of automatically assessing the improper "motor club" fees. Consumers who purchase or renew Permanent General automobile insurance are automatically and deceptively deducted additional fees for an unrequested "motor club" membership. This automatic and fraudulent practice by Permanent General is conducted merely to obtain additional profits for it and NSD at the expense of a vulnerable and targeted class of Florida consumers. These deceptive practices, which are challenged in this action, are described in more detail below.

16. Upon information and belief, Permanent General receives at a minimum 70% of the fee charged for the "motor club." Rather than contract through a third-party, Permanent General could offer the same purported benefits of the "motor club," i.e. rental reimbursement and towing and labor coverage, at a much lower cost to the consumer. To do so, however, would require Permanent General to take on the risk of the coverage. Therefore, Permanent General has devised the "motor club" fee scheme with NSD in order to unjustly reap the profits of the "motor club" without taking on any of the risk to the detriment of consumers, such as Plaintiff.

*Permanent General's improper "motor club" scheme.*

17. In recent years, there has been a growing trend in the State of Florida among "sub-prime" lenders, "non-standard" insurance providers, check cashing or "pay day" loan servicers, and "industrial loan" providers: these service providers have begun the common practice of requiring or otherwise involuntarily causing their customers, most of whom are of limited education and low socio-economic status, to obtain and pay premiums for coverage into a purported "motor club" that is associated or affiliated with the service provider. In most instances, the purported "motor club" is a worthless fiction that is of no value to the consumer at all. Most consumers, like Plaintiff in this action, are unaware of the existence of this "motor club" coverage, or of any of its purported benefits, for which they are being assessed. The creation, establishment, and forced transactions with these purported "motor clubs" has resulted in the realization of substantial profits to providers of "non-standard" insurance or "sub-prime" loans in Florida and the third-party providers of these "motor clubs" at the expense of targeted Florida consumers.

18. As described herein, the entire purpose and intent in collecting these fees via purported "motor clubs" is to increase profits for the insurer and "motor club" provider while otherwise avoiding or evading applicable Florida law and regulation governing the sale of insurance. Stated otherwise, these purported "motor club" fees unilaterally deducted by the provider are nothing more than a ruse to collect additional – yet unapproved – premiums from consumers under a guise of legitimacy, while avoiding compliance with Florida law regulating the sale of insurance in this state. These fees also allow Permanent General to receive substantial profits without taking on any of the risk associated with coverage.

19. This action challenges Permanent General's ongoing and systematic practice of unilaterally and deceptively deducting these fees from insureds for a bogus "motor club" product

7

in order to increase Permanent General and NSD's profits. Plaintiff in this action, like most of Permanent General's customers, was unaware of any "motor club" benefits or that she had signed up for a membership in a "motor club."

20.     Specifically, Permanent General routinely assesses its insureds an additional fee for purported "motor club" coverage which is not requested by the insured, and which is not adequately disclosed to the consumer. For example, while Plaintiff's application indicates that it "includes the purchase of the following product(s) provided by Nation Safe Drivers (NSD): Motor Club", it is not described anywhere on the declarations pages to Plaintiff's policy.

21.     More importantly, Plaintiff was automatically enrolled in NSD's "Motor Club" despite the fact that she declined, or was not offered, "Towing and Labor" and "Rental Reimbursement" coverage with Permanent General. Upon information and belief, her premiums would have been lower had she purchased or been offered coverage similar to the purported benefits of the "motor club" directly through Permanent General rather than paying an excessive fee that was designed to profit not only Permanent General but also NSD.

22.     Most of Permanent General's customers, like Plaintiff in this action, never request any purported "motor club" coverage for which they are assessed, and most consumers, like Plaintiff in this action, are unaware of what, if any, benefits are available through this purported "motor club." This is intentional so that consumers do not take advantage of the purported benefits, eliminating any financial risk to and creating a pure profit for NSD and Permanent General.

23.     As alleged below, the computer programs designed and utilized by Permanent General to provide customer quotes, sales and billing are, upon information and belief, rigged to automatically default into placing "motor club" coverage on customers' accounts and deduct fees

for "motor club" although customers do not ask for nor are they aware that such coverage is placed and that additional fees will be unilaterally deducted each month for the "motor club" membership.

24.     As mentioned above, Permanent General's marketing and business model are designed and intended to encourage its target market to seek a quote for "non-standard" automobile insurance coverage and to ultimately complete an insurance transaction.  By design, however, this is <u>not</u> what the prospective insured receives when he or she obtains an insurance quote from Permanent General and purchases a "non-standard" automobile policy underwritten by Permanent General.

25.     Although Permanent General knows that its targeted customers are cash-strapped and typically seek only minimum-limits automobile insurance sufficient to comply with state law, Permanent General engages in the systematic and widespread practice in Florida of **<u>automatically</u>** – without request from the consumer – including the highly profitable yet bogus "motor club" in the "non-standard" insurance quote provided to the consumer and in the minimum-limits automobile policy purchased by the consumer.  In other words, a consumer who requests a "non-standard" auto insurance quote and policy from Permanent General will not receive a quote and policy for what he or she requested, but will instead receive a quote that also includes a worthless "motor club" product that is not clearly disclosed.  This is despite the fact that consumers often decline, or would decline if offered by Permanent General, the very benefits that are purportedly provided by the "motor club," such as towing and labor or rental reimbursement when they apply for a policy with Permanent General.  Upon information and belief, executive management at Permanent General's home office has intentionally programmed the centralized computer programs to automatically default to include a "motor club" product in every quote given and policy issued in Florida.  Other coverages, including coverages which are encouraged by the

legislature such as UM and med-pay, are not automatically defaulted to by Permanent General in this fashion.

26. According to the purported contract between NSD and Plaintiff (which Plaintiff has no recollection of and therefore, disputes the validity of), members of the "motor club" only have thirty days to cancel in order to get any refund and avoid paying the full amount of the "membership." After that, they can only cancel if they pay a cancellation fee of $50.00 and the amount of claims already paid during their membership term. Therefore, unlike ordinary insurance where the insured receives a refund of unpaid premiums, members of the "motor club" are effectively locked in after thirty days.

27. Another clear example of the deceptive and fraudulent nature of the "motor club" and how it is assessed is in the renewal of insureds' policies with Permanent General. When Plaintiff renewed her policy with Permanent General for another six-month period (August 5, 2018 to February 5, 2019), she received declarations pages that made no mention of the "motor club" product or any fees for the "motor club." *See* Renewal Declarations Pages, attached hereto as Exhibit A. When Plaintiff renewed her policy, she did not enter into an agreement with NSD to renew any purported "motor club" benefits. Consequently, neither NSD nor Permanent General were authorized to collect or receive the "motor club" fee. Yet, the fees for the "motor club" coverage continued to be deducted each month. Plaintiff's renewal experience was not unique because, upon information and belief, Permanent General and NSD continue to automatically collect unauthorized "motor club" fees for the duration of an insured's coverage with Permanent General.

28. The "motor club" that Permanent General unilaterally and deceptively places on each policy and deducts a deceptive fee for is, upon information and belief, utterly worthless to

the consumer. To the extent any benefits are provided to the "motor club member," they are minimal in comparison to the excessive monthly fee that is automatically charged to Permanent General's insureds.

29. With no risk assumed by Permanent General, very little, if any, risk assumed by NSD, and no knowledge of its existence by the customer, the "motor club" membership is a significant revenue maker for Permanent General and NSD, yet utterly worthless to the consumer.

30. Permanent General and NSD's conduct is not the product of a "rogue agent" or isolated occurrence, but rather part of a systematic and fraudulent scheme created, implemented, and overseen by Permanent General and NSD's corporate management. Permanent General's automatic and deceptive practice of charging and collecting "motor club" fees on automobile policies sold by Permanent General is conducted merely to obtain additional profits for Defendants at the expense of an unknowing and targeted class of Florida consumers. Unfortunately, this improper practice of automatically enrolling customers into a questionable "motor club" membership and unilaterally deducting fees for "motor club" from monthly premium payments without proper consent or disclosure is rampant among certain issuers of "non-standard" insurance, whose insureds are often less educated and of lower socio-economic status. This conduct, like the conduct of Permanent General, is widespread in the "non-standard insurance" industry.

***Plaintiff was a victim of Permanent General and NSD's deceptive practices.***

31. Plaintiff was a victim of the improper practices described herein. Plaintiff sought non-standard automobile coverage for her vehicle. Plaintiff contacted Permanent General for a quote for coverage on her vehicle. As stated, Permanent General's system is intentionally rigged to include additional costs for the "motor club" product. Plaintiff did not request any "motor club" product nor did she understand that she was a member in a "motor club"; therefore, like many

consumers, she never sought any of the purported "benefits" offered by the "motor club" (as is Defendants' intent). After completing the application, Plaintiff received her policy declaration pages, which made no mention of the "motor club."

32. Plaintiff's initial contract period with Permanent General was from February 5, 2018 to August 5, 2018, which she renewed for one six-month term covering August 5, 2018 to February 5, 2019. Plaintiff has no recollection of electronically signing a document with NSD, but a one-page document exists with an electronic signature purporting to be Plaintiff's. Plaintiff disputes the validity of this agreement. That document states that it is limited to a "contract period" of February 5, 2018 to August 5, 2018. There is no document suggesting that NSD was authorized to renew Plaintiff's "motor club" benefits (to the extent any benefits existed in the first place).

33. Despite the fact that Plaintiff only requested Permanent General automobile insurance coverage and declined, or was not offered, coverage for towing and labor and rental reimbursement, Permanent General nonetheless unilaterally deducted a fee from each of Plaintiff's monthly premium payments for a purported "motor club" membership with NSD, a third-party. Plaintiff did not know, had no reason to know, and could not know that Permanent General and NSD were profiting off of this "motor club" fee at Plaintiff's expense or that the "motor club" offered little to no benefits in comparison to the cost of the membership. Permanent General and NSD collected these additional fees through their deceptive and improper conduct and were unjustly enriched by the receipt of these fees.

34. The purported "motor club" membership with NSD that Permanent General unilaterally assessed against Plaintiff is, upon information, a non-existent fiction. The purported "motor club" with NSD that Permanent General assessed Plaintiff for is a complete sham, nothing

more than an illegitimate revenue generator for Defendants, and a means of funneling additional premium and revenue back to Defendants while evading and violating applicable Florida law.

35. Additionally, when Plaintiff renewed her non-standard automobile insurance with Permanent General, Plaintiff did not sign any documentation renewing a membership in NSD's purported "motor club." Yet, Plaintiff continued to be charged the "motor club" fee on her monthly invoices with Permanent General. Thus, to the extent any benefits did exist with the "motor club," Plaintiff would not have been entitled to receive them after her Permanent General insurance renewed despite continuing to pay the fee. At least after August 5, 2018, NSD had no contractual right to receive any payments for membership in its "motor club."

36. Defendant Permanent General improperly and deceptively charged and collected from Plaintiff excessive fees for NSD's "motor club." As stated, Plaintiff's assessment and payment for these additional charges and products was not a one-time, isolated occurrence. To the contrary, it was a result of a well-designed business practice implemented by Permanent General and NSD to obtain additional profits at the expense of an unsuspecting segment of consumers in Florida. As stated, the computer systems and programs utilized by Permanent General in quoting, selling and processing "non-standard" automobile insurance in Florida are intentionally rigged in such a manner so as to automatically or more easily perpetrate the improper business practices described herein. Permanent General automatically deducted this fee in order to reap substantial risk-free profits.

## CLASS ACTION ALLEGATIONS

37. Pursuant to FED. R. CIV. P. 23, Plaintiff respectfully seeks certification of the following class:

> All Florida citizens residing in the State of Florida, who, within five (5) years of the filing of Plaintiff's action, purchased automobile insurance underwritten by

Permanent General Assurance Corp. and were assessed and paid premium amounts for a "motor club" product with Nation Safe Drivers Services, Inc.

38. Excluded from the proposed class are Defendants, any of Defendants' affiliated corporations or agents, any entity in which Defendants have a controlling interest, and any agents, employees, officers, and/or directors of Defendants or any other such entities and its representatives, heirs, successors, and/or assigns.

39. **Numerosity.** The class is so numerous that it would be impracticable to join all affected class members in a single action.

40. **Existence and Predominance of Common Questions of Law and Fact.** There are common questions of law and fact common and of general interest to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

   a. Whether Defendants engaged in a wide-spread and systematic practice of deceiving Permanent General's insureds by assessing, collecting, and/or profiting from automatic fees for a fictitious "motor club" membership;

   b. Whether Defendants have been unjustly enriched by virtue of the deduction of excessive fees for "motor club" membership that are automatically included in the insurance application and renewal of insurance with Permanent General;

   c. Whether the systems or programs used by Permanent General or on its behalf are intentionally rigged to automatically include and assess "motor club" memberships with NSD in every insurance transaction, including renewals;

   d. Whether Defendant NSD violated FLA. STAT. § 501.201, *et seq.* ("FDUTPA"); and

  e.  Whether Plaintiff and class members are entitled to class relief as requested herein.

  41. **Typicality.**  The claims of the named Plaintiff are typical of the claims of the class. The claims arise out of the same standard form improper conduct perpetrated on members of the class.

  42. **Adequate Representation.**  The Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members.  Plaintiff has retained class counsel competent to prosecute class actions, and is financially able to represent the class.

  43. **Superiority.**  The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The interest of judicial economy strongly favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages are too small to make it practicable to bring individual lawsuits.

  44. Class action treatment is proper and this action should be maintained as a class action pursuant to FED. R. CIV. P. 23 because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**UNJUST ENRICHMENT**
**(against both Defendants)**

  45. Plaintiff adopts and incorporates all previous allegations in full.

  46. Defendant Permanent General and NSD knowingly received money from Plaintiff and each member of the putative class through the charging and collection of the "motor club" fee

as described herein.  Both Permanent General and NSD derived substantial economic gains by virtue of Permanent General's automatic deduction of a $10 "motor club" fee from Plaintiff and putative class members each month.  Defendants knew that Plaintiff and putative class members had little understanding, if any, of the purported benefits of the "motor club" membership, and thereby, eliminated any risk and created a windfall in profits for themselves.

47. Under the circumstances outlined herein, Defendants have been unjustly enriched by virtue of the improper business practices described herein.  It would be inequitable and unjust for Defendants to retain such ill-gotten gains, which Defendants have received as a result of their misconduct.  Accordingly, this Court should impose a constructive trust on those monies by which Defendants or their affiliates have been unjustly enriched as a result of the improper practices described herein.

## COUNT II
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(against Defendant NSD)**

48. Plaintiff adopts and incorporates all previous allegations in full.

49. Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, *et seq.* ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

50. The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.202.

51.     NSD is not regulated under the laws of The Office of Insurance Regulation of the Financial Services Commission and does not do business in the State of Florida as an insurance company.

52.     Plaintiff and each member of the putative class, as "consumers" under FDUTPA (FLA. STAT. § 501.203(7)), have been harmed by NSD's unconscionable, deceptive, and unfair acts and practices in the collection of and profiting from the "motor club" fee.  NSD characterizes the fee as a legitimate charge which is designed to provide membership in its "motor club."  In truth, the fee is a sham that provides no real benefits, or at least not any benefits comparable to the amount charged to unwitting customers, such as Plaintiff.

53.     Defendant NSD's deceptive and unfair practices directed toward Plaintiff and putative class members include, but are not limited to:

    a.   Profiting from the "motor club" fee without incurring any risk;

    b.   Failing to adequately inform consumers about the purported benefits available under NSD's "motor club" with the intention to prevent consumers from filing claims under the purported membership;

    c.   Continuing to collect amounts for and profit from a "motor club" membership without the authorization of Plaintiff and putative class members when no such membership exists; and

    d.   Locking consumers into the "motor club" membership.

54.     Defendant NSD's deceptive practices as set out herein were likely to mislead reasonable consumers under the circumstances.

55.     As a result of the deceptive and unfair practices described above, Plaintiff and each putative member of the class paid the improper "motor club" fee to their detriment.

56. Plaintiff, on behalf of herself and each member of the putative class, demands trial by jury and all remedies and damages available to her, including repayment of all "motor club" fees, a declaration that NSD's practices described above are deceptive or unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act, restitution, interest, and the attorneys' fees and costs incurred in bringing this action, pursuant to FLA. STAT. § 501.201.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. that this Court certify this action as a class action, and that the Court find and conclude that Plaintiff herein is an appropriate representative for the Class;

b. that this Court impose a constructive trust on those monies by which Defendants or their affiliates have been unjustly enriched as a result of the improper practices described herein;

c. that judgment be entered against Defendants in such amount as will fully and adequately compensate Plaintiff and the other class members;

d. that a declaration be entered declaring that NSD's practices as described above are deceptive or unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act;

e. that Plaintiff have and recover all interest, attorney's fees and court costs; and

f. that this Court grant such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: October 27, 2020

/s/  J. Matthew Stephens
J. Matthew Stephens (Florida Bar No. 0688649)
Robert G. Methvin, Jr. (to file for admission *pro hac vice*)
James M. Terrell (to file for admission *pro hac vice*)
Courtney C. Gipson (to file for admission *pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mtattorneys.com
rgm@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

*Attorneys for Plaintiff*

**DEFENDANTS TO BE SERVED BY PERSONAL PROCESS SERVER AT:**

**Permanent General Assurance Corp.**
c/o Chief Financial Officer
200 E. Gaines ST
Tallahassee, FL 32399-0000

**Nation Safe Drivers Services, Inc.**
c/o NRAI Services, Inc.
1200 South Pine Island Road
Plantation, FL 33324