**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Case No. 9:20-cv-81979-WPD – Dimitrouleas**

| | |
|---|---|
| **DORINE L. CONNOR, MYRTLE E.** | ) |
| **PUGH and MATTHEW K.** | ) |
| **LANCASTER,** Individually and on behalf | ) |
| of all other similarly situated, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| **PERMANENT GENERAL** | ) |
| **ASSURANCE CORP.,** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**[1]

COME NOW, Plaintiffs Dorine L. Connor, Myrtle E. Pugh and Matthew K. Lancaster, ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, and file this Third Amended Class Action Complaint against Defendant Permanent General Assurance Corp. ("Permanent General" or "Defendant"). In support thereof, Plaintiffs state the following:

**INTRODUCTION**

1.      Defendant Permanent General markets, sells, and underwrites non-standard automobile insurance.   Non-standard automobile insurance is typically procured by those consumers who, due to financial constraints, troubled credit histories, or otherwise, are unable to obtain or afford state-mandated auto coverage through standard carriers.   In the non-standard auto insurance market, it is not uncommon for policies to cancel.   Cancellations can be due to: non-payment of premium by the insured and/or the insured's inability to make premium payments due

_____

[1] This Third Amended Complaint is filed with leave of the Court.  (D.E. 66.)

to financial constraints; availability of a more affordable option for the insured; loss of the insured's vehicle; or other reasons.

2.      Because it is not uncommon in the non-standard automobile insurance market for policies to cancel, it is important that consumers be given clear, advance notice of the existence of any cancellation fee/penalty, the precise methodology of its calculation, and the circumstances that will trigger its assessment.   Otherwise, the insured cannot make informed decisions prior to purchase, during the policy period, or upon renewal.

3.      Permanent General failed to keep its contractual promise to provide premium refunds to Plaintiffs Dorine Connor, Myrtle Pugh and Matthew K. Lancaster when they cancelled their coverage using a clear and unambiguous methodology, but then, in practice, Permanent General used an undisclosed and illegal practice to enrich itself and short-change Ms. Connor, Ms. Pugh and Mr. Lancaster as well as other similarly situated insureds. This business practice was not random or isolated to Plaintiffs Connor, Pugh and Lancaster, nor was it the result of a mistake or miscalculation. Rather, Permanent General's conduct is part of a common and uniform business practice and protocol employed by it when policies are canceled and premium refunds are due to the insured.

4.      The business practice as described herein was implemented by Permanent General to obtain additional profits and revenues at the expense of an unsuspecting and intentionally-targeted segment of "non-standard" automobile insurance consumers. Permanent General knew that, given the relatively small refund amounts it is improperly withholding from these policyholders, these non-standard insureds have little individual recourse in remedying Permanent General's improper business practice. This class action, which is based on Permanent General's

standard, form contracts and uniform deceptive business practices, seeks to provide relief to those non-standard insureds who were subject to this improper conduct.

## **PARTIES**

5.      Plaintiff Dorine L. Connor ("Plaintiff Connor") is an adult resident citizen of Florida and resides in Winter Haven, Florida. In September 2019, Plaintiff Connor renewed her non-standard automobile policy with Permanent General, Policy Number ███████. The policy period for her renewed policy was September 24, 2019 to September 24, 2020. On May 26, 2020, Plaintiff Connor chose to cancel her policy with Permanent General and notified it of her cancellation on this date. In breach of its contract with Plaintiff Connor, Permanent General provided her with a premium refund that was roughly $48 less than she should have received because it failed to refund her 90% of the pro rata return premium amount due back to her upon cancellation.

6.      Plaintiff Myrtle Pugh ("Plaintiff Pugh") is an adult resident of Florida and resides in Pensacola, Florida. In July 2020, Plaintiff Pugh renewed her non-standard automobile policy with Permanent General, Policy Number ███████. The policy period for her renewed policy was July 22, 2020 to July 22, 2021. On August 19, 2020, Plaintiff Pugh chose to cancel her policy with Permanent General and notified it of her cancellation on this date. In breach of its contract with Plaintiff Pugh, Permanent General failed to provide her with any premium refund (despite being owed approximately $40) upon cancellation and instead sent her a collection notice months later stating that she owed $596.39 on her cancelled policy.

7.      Plaintiff Matthew K. Lancaster ("Plaintiff Lancaster") is an adult resident citizen of California and resides in Vallejo, California.  In June 2019, Plaintiff Lancaster renewed his non-standard automobile policy with Permanent General, Policy Number ███████.   The policy

period for his renewed policy was June 8, 2019 to June 8, 2020. On May 26, 2020, Plaintiff Lancaster chose to cancel his policy with Permanent General and notified it of his cancellation on this date.  In breach of its contract with Plaintiff Lancaster, Permanent General failed to provide him with any premium refund upon cancellation and instead unilaterally and without disclosure deducted a "Short Rate Cancel Fee" from the money previously paid by Plaintiff Lancaster and held by Permanent General.

8.       Defendant Permanent General Assurance Corporation ("Permanent General") is a corporation organized under the laws of Wisconsin with its principal place of business at 2636 Elm Hill Pike, Nashville, TN 37214 and regularly conducts business in this district. Permanent General markets, sells, underwrites, and services non-standard automobile insurance throughout the United States, including Plaintiffs' automobile insurance as described in this action. Plaintiffs and class members' policies are contracts with Permanent General.

## JURISDICTION AND VENUE

9.       Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because at least one member of each class is a citizen of a state different from at least one Defendant; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. All other factual conditions precedent necessary to empower this Court with subject matter and personal jurisdiction have been satisfied.

10.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction in this district and a substantial portion of Defendants' conduct that forms the basis of this action occurred in Florida, including within the boundaries of this district.

4

11.     This Court has personal jurisdiction over the Defendants because Plaintiffs Connor's and Pugh's claims arise out of, among other things, the Defendants conducting, engaging in, and/or carrying on business in Florida; breaching a contract in this State; contracting to insure automobiles in Florida; and collecting or profiting from the unauthorized motor club fees from Permanent General insureds in Florida. Defendants also purposefully availed themselves of the opportunity of conducting activities in the State of Florida by marketing their products within the State and intentionally developing relationships with customers within the State.

## FACTUAL BACKGROUND

***Permanent General and "Non-Standard" Auto Insurance.***

12.     Defendant Permanent General underwrites and provides non-standard automobile insurance to customers throughout the United States, including Florida and California. Upon information and belief, a majority of Permanent General's sales are made to customers either online or telephonically.

13.     Since its inception, Permanent General's business model has been to offer as its core product non-standard automobile insurance of minimum limits to comply with state financial responsibility laws. Non-standard automobile insurance is typically procured by those consumers who, due to financial constraints, troubled credit histories, or otherwise, are unable to obtain or afford coverage through standard, more commonly-known carriers.

14.     As part of its marketing efforts to attract customers of non-standard automobile insurance, Permanent General's radio, internet, television, and billboard advertising emphasizes the availability of low-cost, state-minimum automobile liability coverage with a low, affordable down payment and the availability of convenient monthly premium payments in order to meet the consumer's budgeting needs.

***Plaintiffs Connor, Pugh and Lancaster Were Victims of Permanent General's Improper Premium Refund Scheme.***

15.     Upon information and belief, Permanent General's non-standard auto policies are written for six (6) month or twelve (12) month policy periods, with a twelve (12) month policy period being widely utilized by Permanent General.

16.     Upon information and belief, Permanent General is thoroughly knowledgeable about the demographic profile and common traits/characteristics of its typical customers. Permanent General is aware that, because of budgeting constraints, an overwhelming majority, if not all, of its customers want or need to pay their automobile insurance premium on a set monthly basis rather than in full up front for the entire policy period, just as advertised by Permanent General. Upon information and belief, an overwhelming majority, if not all, of Permanent General's customers pay their auto premium either on a set monthly basis establishing when the monthly premium payment is due. If the customer does not pay the monthly premium payment when due (and with proper advance notification provided), the policy is then cancelled and there is no coverage.

17.     Permanent General knows that, in light of its customer demographic and the highly competitive non-standard auto insurance market, it is not uncommon for its policies to be cancelled during a twelve (12) month policy period. Such cancellations can be due to: non-payment of premium by the insured and/or the insured's inability to make premium payments due to financial constraints or difficulties; availability of a more affordable option for the insured; customer dissatisfaction with the coverage, service, or pricing subsequent to the quote and application process; or other reasons. Upon information and belief, Permanent General knows that a substantial percentage of its automobile policies are cancelled during a twelve (12) month policy period.

18.     Because it is not uncommon in the non-standard automobile insurance market for policies to cancel during a policy period, it is important that consumers be given clear, advance notice of the potential or existence of any fees or penalties that the consumer may incur upon cancellation, including clear, advance notice of the cancellation fee or penalty, the precise methodology of its calculation, and the circumstances that will trigger its assessment. Advance notice in this regard allows consumers to make informed decisions not only prior to purchasing coverage, but during the policy period and upon renewal. As described herein, unlike most, if not all, of Defendant's non-standard competitors, Defendant Permanent General charges and retains for itself a so-called "Short Rate Cancel Fee" upon cancellation. This action challenges Defendant's unfair, unlawful, and fraudulent business practices surrounding the disclosure and assessment of cancellation penalties against insureds when policies are cancelled.

***Plaintiffs Connor's and Pugh's Transactions with Permanent General.***

19.     In September 2019, Plaintiff Connor renewed her non-standard automobile policy with Permanent General, Policy Number ███████. A copy of Connor's applicable policies, declarations pages, and policy applications are attached hereto collectively as Exhibit A.

20.     The policy period for Plaintiff Connor's renewed policy was September 24, 2019 to September 24, 2020. Like the overwhelming majority of Permanent General's customers, Plaintiff Connor made monthly premium payments as scheduled and billed by Defendant Permanent General. Plaintiff Connor's monthly premium amount was $259 (inclusive of an installment fee) and was due to be paid by the 24th of each month. In September 2019, Plaintiff Connor paid the down payment required by Permanent General to renew her policy, and thereafter timely and accurately paid her monthly premium to Permanent General.

21.     On or about May 22, 2020, Plaintiff Connor timely and accurately made her monthly premium payment of $259 that was due by May 24th or else coverage would be cancelled. On May 26, 2020, Plaintiff Connor chose to cancel her policy with Permanent General and notified it of her cancellation on this date.  In light of this cancellation, Plaintiff Connor anticipated a refund due on premium paid to, but unearned by, Permanent General.

22.     In July 2020, Plaintiff Pugh renewed her non-standard automobile policy with Permanent General, Policy Number ███████. A copy of Plaintiff Pugh's applicable policies, declarations pages, and policy applications are attached hereto collectively as Exhibit B.

23.     The policy period for Plaintiff Pugh's renewed policy was July 22, 2020 to July 22, 2021.  According to her renewal offer, Plaintiff Pugh's monthly premium amount would be $579.89 (inclusive of an installment fee). This amount was due to be paid by the seventh of each month. In July 2020, Plaintiff Pugh paid the down payment of $594.61 required by Permanent General to renew her policy.

24.     Defendant Permanent General Assurance Corp.'s auto insurance policy, policy application, and declarations page are standard form documents created by Permanent General that, except for customer-specific coverages, rates, and customer information, do not materially differ among its insureds in Florida. The language of Permanent General's Florida auto policy, application, and declarations page are standard forms and consistent among its insureds.

25.     Plaintiffs Connor and Pugh's standard form Florida policy states as follows with respect to refunds due of unearned premium:

**CANCELLATION AND NON-RENEWAL**

. . .

**G. Refund of Premium.**

1.       Upon cancellation "you" may be entitled to a refund of unearned premium. Making a premium refund is not a condition of cancellation.

2.       ***If the cancellation is at "your" request, "we" will refund 90% of the pro rata unearned premium.***

3.       If the policy is canceled at "our" request, "we" will make a pro rata refund of any unearned premium.

*See* Exhibit A at p.5 of Plaintiff Connor's Policy (emphasis added); Exhibit B at p.5 of Plaintiff Pugh's Policy (emphasis added).

26.      In accordance with this policy provision, and read from the view of a reasonable person/layman in Plaintiffs Connor and Pugh's position, Plaintiffs Connor and Pugh understood, expected, and believed that the refund of unearned premium due to be returned to them would be provided at 90% of the pro-rata return premium amount due back to Plaintiffs Connor and Pugh.

27.      In Plaintiff Connor's case, she paid her monthly premium of approximately $259 on May 22, 2020 before the policy was affirmatively cancelled effective May 26, 2020. As a result, Plaintiff Connor was due a refund of approximately $200.00.

28.      In Plaintiff Pugh's case, she paid the down payment of $594.61 on July 21, 2020 before the policy was affirmatively cancelled effective August 19, 2020. As a result, Plaintiff Pugh was due a refund of approximately $40.

29.      However, despite the governing contractual language, Permanent General provided Plaintiff Connor with a premium refund upon cancellation in an amount of only $152.86, thereby shorting her roughly $48 in violation of the contract. Permanent General did not provide Plaintiff Pugh with any premium refund upon cancellation, thereby failing to pay her approximately $40 in

violation of the contract. Moreover, Permanent General sent Plaintiff Pugh a collection letter dated October 16, 2020 – almost two months after the effective cancellation of her contract – stating that she owed $596.39 (attached hereto as Exhibit C).

30.     Upon information and belief, Permanent General improperly retained amounts unauthorized by the contract, and/or assessed Plaintiffs Connor and Pugh an undisclosed penalty that is not authorized by the contract. This practice by Permanent General was not random or isolated to Plaintiffs Connor and Pugh, but rather is part of a common and uniform business practice employed by Permanent General when policies are cancelled and premium refunds are due to the insured. This common practice by Permanent General that was employed on Plaintiffs Connor and Pugh and other class members not only violates Permanent General's standard form contracts, but it also violates state laws governing the cancellations of auto policies and the return of unearned premium. *See* WEST'S FLA. STAT. ANN. § 627.7283.

31.     Permanent General breached its standard form contracts with Plaintiffs Connor and Pugh and other members of the class by calculating premium refunds due to insureds on something other than "90% of the pro rata unearned premium." If a refund of unearned premium due to be returned to the insured at "90% of the pro rata unearned premium" was intended by Permanent General to mean something <u>other than</u> 90% of the pro-rata return premium amount due back to the insured – which is how a reasonable person or layman in the insured's position would understand the provision – then it is certainly <u>not</u> spelled out or specified in the policy drafted by Permanent General.

32.     Permanent General breached its standard form contracts with Plaintiffs Connor and Pugh and other members of the class by improperly assessing an undisclosed and unlawful penalty that is not contractually authorized. The policies do not use the term "penalty" or say anything

about a penalty, much less describe or specify how any such penalty will be calculated. Likewise, the cancellation notice provided to Plaintiffs Connor and Pugh (attached hereto as Exhibits D and E) by Permanent General do not say anything about a penalty, nor do they explain or illustrate how the amount of $152.86 refunded to Plaintiff Connor or the failure to provide a refund to Plaintiff Pugh were derived by Permanent General.

33.     Not only does Permanent General's uniform business practice described herein violate the standard form contracts with its insureds, but it also violates Florida's statutory law governing the cancellation of auto policies and return of unearned premiums. Pursuant to WEST'S FLA. STAT. ANN. § 627.7283, "unearned premiums must be computed on a pro rata basis":

> (1) If the insured cancels a policy of motor vehicle insurance, the insurer must mail or electronically transfer the unearned portion of any premium paid within 30 days after the effective date of the policy cancellation or receipt of notice or request for cancellation, whichever is later. This requirement applies to a cancellation initiated by an insured for any reason. However, the insured may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the same insurer or insurer group.
>
> . . .
>
> (3) If the unearned premium is not mailed, electronically transferred, or applied to the unpaid balance of other policies within the applicable period, the insurer must pay to the insured 8 percent interest on the amount due. If the unearned premium is not mailed or electronically transferred within 45 days after the applicable period, the insured may bring an action against the insurer pursuant to s. 624.155.

If the insured cancels, the insurer may retain up to 10 percent of the unearned premium and must refund at least 90 percent of the unearned premium. If the insurer cancels, the insurer must refund 100 percent of the unearned premium. Cancellation is without prejudice to any claim originating prior to the effective date of the cancellation. For purposes of this section, unearned premiums must be computed on a pro rata basis.

***Plaintiff Lancaster's Transactions with Permanent General.***

34.    On June 8, 2018, Plaintiff Lancaster purchased a non-standard automobile policy with Defendant Permanent General, Policy No. 22-CA-4031030.  A copy of Plaintiff Lancaster's policy and application are attached as Exhibit F.  The initial policy period was June 8, 2018 to June 8, 2019.  In June 2019, Plaintiff Lancaster renewed his non-standard automobile policy with Defendant.  The renewal offer provided by Permanent General to Plaintiff Lancaster, which Plaintiff Lancaster accepted, along with the renewal letter and renewal declaration, are attached hereto collectively as Exhibit G.  The policy period for Plaintiff Lancaster's renewed policy was June 8, 2019 to June 8, 2020.  In June 2019, Plaintiff Lancaster paid the down payment required by Permanent General to renew his policy, and thereafter properly paid his monthly premium of $123.12 (inclusive of fees) as scheduled and billed by Permanent General (which was due by the 3rd of each month).

35.    For the monthly premium payment for May 2020, Plaintiff Lancaster timely and accurately made his monthly premium payment of $123.12, which was due before May 3rd or else coverage would be cancelled.  On May 26, 2020, Plaintiff Lancaster chose to cancel his policy with Permanent General and notified Permanent General of his cancellation on this date.  In light of this cancellation, Plaintiff Lancaster anticipated a refund due on premium paid to, but unearned by, Permanent General.  As a result of Plaintiff Lancaster's cancellation, Permanent General unilaterally and without disclosure deducted a so-called "Short Rate Cancel Fee" from the premium money previously paid by Plaintiff Lancaster in May and held by Permanent General.  None of Plaintiff's policy documents reference the term "Short Rate Cancel Fee."

36.    Defendant Permanent General's auto insurance policy, policy application, and declarations page are standard form documents created by Defendant that, except for customer-

specific coverages, rates, and customer information, do not materially differ among Defendant's

insureds in California.  The language of Defendant Permanent General's California auto policy,

application, and declarations page are standard forms and consistent among California insureds.

37.    Plaintiff Lancaster's standard form California policy states as follows with respect

to refunds due upon cancellation:

**F.    Refund of Premium**

1.    Upon cancellation "you" may be entitled to a refund of unearned premium.
Making a premium refund is not a condition of cancellation.  If you are
entitled to a refund, we will mail or deliver the refund to you within 25 days
of cancellation.

2.    **If "you" cancel, or if "we" cancel because of nonpayment of premium,
"we" will send "you" a refund of the unearned premium less a 10%
cancellation fee.**

3.    If "we" cancel for any reason other than nonpayment of premium, "we" will
send you a refund of premium calculated on a pro rata basis.

4.    All policy fees are fully earned on the effective date of the policy.

*See* Exhibit F at p.7 of Plaintiff Lancaster's Policy (emphasis added).

38.    While this policy provision references "a 10% cancellation fee," there is no

disclosure or explanation specifying how the "10% cancellation fee" is to be calculated.  Reading

the policy provision in context and from the view of a reasonable person/layman in the insured's

position, a consumer would expect and believe that, if she cancels, Defendant would retain, as a

cancellation fee, 10% of the unearned premium amount that is due to be sent back to the insured.

If the "10% cancellation fee" is to be calculated by some means other than 10% of the unearned

premium amount that is due to be sent back/refunded to the insured—which is how a reasonable

person or layman in the insured's position would understand the provision—then it is certainly not

spelled out or specified in the policy drafted by Defendant, much less in any separate document

provided in advance of purchase and prior to renewal as required by CAL. INS. CODE §481(c)(1), discussed more below.

39.     As stated, reading the policy provision in context and from the view of a reasonable person/layman in the insured's position, a consumer would expect and believe that, if he or she cancelled, Permanent General would retain, as a cancellation fee, 10% of the unearned premium amount that is due to be sent back to the insured.   However, despite the language drafted by Permanent General, that is <u>not</u> the protocol Permanent General follows when an insured cancels. Instead, Permanent General unilaterally calculates and retains for itself what it calls a "Short Rate Cancel Fee" that is <u>not</u> calculated as 10% of the unearned premium amount that is due to be sent back/refunded to the insured.   Rather, upon information and belief, Permanent General assesses and retains its "Short Rate Cancel Fee" based upon 10% of premiums never due from the insured, never paid by the insured, and never held by Permanent General.   Further, Permanent General assesses and retains its "Short Rate Cancel Fee" based upon 10% of certain policy-related "fees" despite the language of the contract speaking only as to 10% of *unearned premium*.   These practices by Permanent General violate the standard form contracts with insureds, and/or result in the assessment and retention of an unlawful penalty or illegal liquidated damages that is unenforceable under California law.

40.     There is no disclosure of these practices by Permanent General in the policy documents, much less in any separate document provided to the consumer in advance of purchase and in advance of renewal as required by CAL. INS. CODE §481(c)(1), discussed more below.

41.     As previously alleged, and as Permanent General is well-aware, it is not uncommon in the non-standard automobile insurance market for insureds to need or seek to cancel coverage during a policy period, either because of the insured's financial circumstance, loss of the insured's

vehicle, or perhaps the availability of a more affordable option for the insured.  Accordingly, it is important that the consumer is provided with clear, understandable and conspicuous information about the existence of, and calculation of, any penalties or cancellation fees that will be assessed should the consumer exercise her right to cancel coverage.  In the non-standard insurance market where insureds may need to terminate coverage for a variety of reasons, information surrounding the existence of, and calculation of, cancellation fees or penalties is material and important information needed for consumers to make informed decisions surrounding coverage.

42.     To be certain, the importance of this information prompted the California Legislature to amend CAL. INS. CODE §481 in 2011 to require insurers assessing cancellation fees to provide this information in written disclosures (separate from the policy itself) in advance of policy purchase and in advance of each policy renewal.  The California Legislature recognized the unfairness in insurers imposing and collecting penalties for cancellation without clear, advance disclosure to the consumer.  CAL. INS. CODE §481, as amended, provides:

> (c)(1) Any insurance policy that includes a provision to refund premium other than on a pro rata basis, including the assessment of cancellation fees, shall disclose that fact in writing, including the actual or maximum fees or penalties to be applied, which may be stated in the form of percentages of the premium. **The disclosure shall be provided prior to, or concurrent with, the application and prior to each renewal to which the policy provision applies.** . . . Disclosure shall not be required if the policy provision permits, but does not require, the insurer to refund premium other than on a pro rata basis, and the insurer refunds premium on a pro rata basis.

CAL. INS. CODE § 481.

43.     Permanent General fails to comply with CAL. INS. CODE §481(c)(1).  There are no separate, written disclosures provided to the insured in advance of policy purchase and in advance of each policy renewal.  The lone attempted "disclosure" in the policy application addresses only policy cancellations for non-payment of premium and states:

- All policy cancellations for non-payment of premium at the request of the named insured are subject to a cancellation fee of 10% of pro-rata unearned premium.

Plaintiff Lancaster's policy application (Exhibit F)

This sentence does not address cancellation fees or penalties for affirmative cancellations as Plaintiff Lancaster initiated and, to the extent Permanent General contends that it does, it is confusing, ambiguous at best, and could only be interpreted by a reasonable consumer/layman in a manner consistent with the policy provision previously discussed—a cancellation fee of 10% of the unearned premium amount that is to be sent back to the insured, not 10% of "fees" and monthly premium amounts never paid by the insured or held by the carrier.

44.     Further, there is no separate, written disclosure provided to the insured in advance of policy renewal as mandated by CAL. INS. CODE §481(c)(1).  Defendant's renewal offer, renewal letter, and renewal declaration page for Plaintiff Lancaster's renewal policy are attached collectively hereto as Exhibit G.  These documents pertinent to Plaintiff Lancaster's renewal policy are standard form documents created by Permanent General that, except for customer-specific coverages, rates, and customer information, do not materially differ among Permanent General's insureds in California.  These documents make no reference or mention whatsoever of any cancellation fee or penalty.  Permanent General provided no written document disclosing or even referencing a cancellation fee prior to Plaintiff Lancaster's renewal as mandated by CAL. INS. CODE §481(c)(1).

45.     Not only are the required, separate disclosures regarding cancellation fees absent in advance of policy purchase and in advance of policy renewal but, as previously discussed, Permanent General's standard form policy itself fails to explain or specify the method for calculating the cancellation fee, much less disclose that Permanent General's internal "Short Rate

Cancel Fee" will be calculated based upon "fees" and monthly premiums never paid by the insured and never held by the carrier.  Permanent General's standard form policy does not disclose or specify that its cancellation fee is calculated by some means <u>other than</u> 10% of the unearned premium amount that is due to be sent back to the insured, which is how any reasonable person/layman would understand Permanent General's policy.  As a consequence, the consumer is misled and left without material information surrounding cancellation, while Permanent General retains for itself money to which it is not entitled.

46.     Despite the governing language of Plaintiff Lancaster's policy, Permanent General internally deducted for itself a "Short Rate Cancel Fee" from Plaintiff Lancaster's refund that was calculated and assessed by virtue of the wrongful business practices described herein.  As a consequence, Permanent General shorted Plaintiff Lancaster's refund in violation of the contract and/or assessed and retained for itself an unlawful penalty that is unenforceable under California law.  Permanent General improperly retained amounts unauthorized by the contract, and/or assessed Plaintiff Lancaster an improper penalty that is not authorized by the contract.  This practice by Permanent General was not random or isolated to Plaintiff, but rather is part of a common and uniform business practice employed by Defendant when policies are cancelled and premium refunds are due to the insured.

***Permanent General's Improper Premium Refund Scheme Is Systematic and Widespread Across the United States.***

47.     Upon information and belief, the "Refund of Premium" provision under the policies' "Cancellation and Non-Renewal" section as found in Plaintiffs Connor, Pugh and Lancaster's policies is the same provision and language found in Permanent General's other non-standard automobile policies issued throughout the United States. Stated otherwise, the policy provisions quoted in paragraphs 25 and 37 of this Third Amended Complaint are the same

provisions found in all other non-standard automobile policies issued by Permanent General throughout the United States.

48.     Permanent General breached its standard form contracts with Plaintiffs Connor, Pugh and Lancaster and other members of the class by calculating premium refunds due to insureds in a manner inconsistent with the policy language.

49.     Permanent General breached its standard form contracts with Plaintiffs Connor, Pugh and Lancaster and other members of the class by improperly assessing an undisclosed and unlawful penalty that is not contractually authorized. The policies do not use the term "penalty" or say anything about a penalty, much less describe or specify how any such penalty will be calculated. Likewise, the cancellation notice provided to Plaintiffs (attached hereto as Exhibits D, E, and H) by Permanent General do not say anything about a penalty, nor do they explain or illustrate how the amount of $152.86 refunded to Plaintiff Connor or the failure to provide a refund to Plaintiff Pugh or Plaintiff Lancaster, were derived by Permanent General.

50.     As stated, the business practices of Permanent General as described herein were not random or isolated to Plaintiffs Connor, Pugh and Lancaster, nor were they the result of a mistake or miscalculation. Rather, Permanent General's conduct is part of a common and uniform business practice and protocol employed by it when policies are cancelled and premium refunds are due to the insured. Upon information and belief, thousands of other insureds have had premium refunds shorted or amounts improperly claimed by Permanent General as a result of this uniform business practice. Further, the applicable policy provisions are all common and uniform among class members. Because of the nature of the uniform business practice and applicable standard form contracts, Plaintiffs Connor, Pugh and Lancaster's claims are well-suited for class action status.

51.     Knowing that a significant percentage of its policies cancel during the policy period, Permanent General's business practice as described herein was implemented by it to obtain additional profits and revenues at the expense of an unsuspecting segment of consumers. Upon information and belief, a majority, if not all, of Permanent General's competitors do <u>not</u> discount any unearned premium paid by the insured and due to be refunded when policies are cancelled. Permanent General employs the common business practice described herein merely to enhance revenues at the expense of a targeted class of consumers. Permanent General knows that, given the relatively small refund amounts it is shorting insureds and improperly keeping itself, its non-standard auto insurance customers have little individual recourse in remedying Permanent General's improper business practice.

## CLASS ACTION ALLEGATIONS

52.     Pursuant to FED. R. CIV. P. 23, Plaintiffs Connor, Pugh and Lancaster respectfully seek certification of the following class:

> All citizens residing in the United States and its territories (excluding the State of Georgia), who, within five (5) years of the filing of this action, were (1) insured under an auto policy sold or issued by Permanent General containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non-Renewal" section as found in Plaintiffs' Connor, Pugh and Lancaster's policies, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by Permanent General and still unearned on the effective date of cancellation.

53.     Plaintiffs Connor and Pugh also respectfully seek certification of the following subclass ("Florida subclass"):

> All citizens residing in the State of Florida, who, within five (5) years of the filing of this action, were (1) insured under an auto policy sold or issued by Permanent General containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non- Renewal" section as found in Plaintiffs Connor's and Pugh's policies, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by Permanent General and still unearned on the effective date of cancellation.

54.     Plaintiff Lancaster respectfully seeks certification of the following subclass ("California subclass"):

> All citizens residing in the State of California, who, within four (4) years of the filing of this action, were (1) insured under an auto policy sold or issued by Permanent General containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non- Renewal" section as found in Plaintiff Lancaster's policy, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by Permanent General and still unearned on the effective date of cancellation.

55.     Excluded from the proposed classes are Defendants, any of Defendants' affiliated corporations or agents, any entity in which Defendants have a controlling interest, and any agents, employees, officers, and/or directors of Defendants or any other such entities and their representatives, heirs, successors, and/or assigns.

56.     **Numerosity and Ascertainability.** The classes are so numerous that it would be impracticable to join all affected class members in a single action. There are, at a minimum, hundreds of members of each proposed class. The identity of class members is ascertainable, as the names and addresses of all class members can be identified in Permanent General or its agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

57.     **Existence and Predominance of Common Questions of Law and Fact.** There are common questions of law and fact common and of general interest to each class. These common questions of law and fact predominate over any questions affecting only individual members of each class. Said common questions include, but are not limited to, the following:

      a.    Whether Permanent General engaged in a widespread and systematic practice of violating contracts with consumers throughout the United States by virtue of the conduct described herein;

      b.    Whether Permanent General retained and collected an unlawful penalty which, in equity and good conscious, is due to be returned to Plaintiffs and members of the class;

      c.    Whether Permanent General violated the provisions of its standard form contracts by wrongfully calculating premium refunds as described herein;

      d.    Whether Plaintiffs and the class members suffered damages as a result of Defendants' actions; and

      e.    Whether Plaintiffs and class members are entitled to class relief as requested herein.

58.    **Typicality.** The claims of the named Plaintiffs are typical of the claims of the classes that they represent and arise out of the same standard form improper conduct perpetrated on members of the respective class.

59.    **Adequate Representation.** The Plaintiffs will fairly and adequately protect the interests of the members of the classes that they represent and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions and are financially able to represent the classes.

60.    **Superiority.** The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of each class is impracticable. The common questions of law and fact regarding Defendants' conduct and the interpretation of form documents devised by Defendants predominate over any questions affecting only individual class members. The interest of judicial economy strongly favors adjudicating the

claims as a class action rather than on an individual basis because the amount of any individual's damages is too small to make it practicable to bring individual lawsuits. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives.

61. Class action treatment is proper and this action should be maintained as a class action pursuant to FED. R. CIV. P. 23 because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

<u>**COUNT I – BREACH OF CONTRACT**</u>

63. Plaintiffs adopt and incorporate Paragraphs 1-62 as if fully set out herein.

64. Plaintiffs Connor, Pugh and Lancaster's policies, as well as the policies of the other class members, are insurance contracts under which Permanent General was paid premiums in exchange for certain promises outlined in the policies issued by Permanent General, including the promise to refund "90% of the pro rata unearned premium" or "unearned premium less a 10%

cancellation fee" or charge only "a cancellation fee of 10% of pro-rata unearned premium" if the insured cancelled the policy as set out in Paragraphs 25 and 37, *supra. See also* Exhibit A at p.5 of Plaintiff Connor's Policy (emphasis added); Exhibit B at p.5 of Plaintiff Pugh's Policy; Exhibit F at p. 7 of Plaintiff Lancaster's Policy.

65.     Permanent General violated standard form contracts with Plaintiffs and the class members by, among other things:

a.     improperly retaining amounts unauthorized by contracts when policies are cancelled and premium refunds are due;

b.     calculating premium refunds due to insureds on something other than "unearned premium less a 10% cancellation fee" or charging a cancellation fee greater than "10% of pro-rata unearned premium" when policies are cancelled at the insured's request or for nonpayment of premium, including by calculating premium refunds or cancellation fees based on certain undisclosed "pro-rated fees";

c.     calculating premium refunds due to insureds on something other than "90% of the pro rata unearned premium" when policies are cancelled at the insured's request or on a "pro rata" basis at the insurer's request, such as for failure to pay premium when due;

d.     not adhering to the duty of good faith and fair dealing implied in every contract, to the extent any discretion was to be exercised by Permanent General; and

e.     improperly assessing an unlawful and unauthorized penalty.

66.     Plaintiffs and the other class members have complied with all applicable provisions of their respective policies.

67.     On or about May 26, 2020, Plaintiff Connor notified Permanent General of her intent to cancel her automobile insurance coverage. As a result, her coverage effectively ended at

12:01 am on May 26, 2020. Permanent General, without justification and in bad faith, breached its obligations under the policy by failing to refund to Plaintiff Connor 90% of the pro rata return premium amount due back to her; thereby, retaining roughly $48 more than it was entitled under the contract.

68.     On or about May 26, 2020, Plaintiff Lancaster notified Defendant Permanent General of his intent to cancel his automobile insurance coverage. As a result, his coverage effectively ended at 12:01 am on May 26, 2020. Defendant Permanent General, without justification and in bad faith, breached its obligations under the Policy by failing to refund to Plaintiff the unearned premium less a 10% cancellation fee or by charging a cancellation fee greater than "10% of pro-rata unearned premium."

69.     On or about August 19, 2020, Plaintiff Pugh notified Permanent General of her intent to cancel her automobile insurance coverage. As a result, her coverage effectively ended at 12:01 am on August 19, 2020. Permanent General, without justification and in bad faith, breached its obligations under the policy by failing to refund to Plaintiff Pugh 90% of the pro rata return premium amount due back to her; thereby, retaining roughly $40 more than it was entitled under the contract.

70.     As a result of Permanent General's breach of contract, Plaintiffs and class members are entitled to recover compensatory damages representing those amounts that were assessed or retained in violation of their contracts with Permanent General.

## COUNT II – RESTITUTION/UNJUST ENRICHMENT OF UNLAWFUL PENALTY
### (on behalf of the Florida subclass)

71.     Plaintiffs Connor and Pugh adopt and incorporate Paragraphs 1-62 as if fully set out herein.

72.     This Count is pled in the alternative to Count I/Plaintiffs' Breach of Contract Claim.

73.     Permanent General's retention of an unearned premium that has been paid by the insured and due to be refunded upon cancellation in the manner described in this Third Amended Class Action Complaint, i.e. "90% of the pro rata unearned premium" when policies are cancelled at the insured's request or on a "pro rata" basis at the insurer's request, constitutes an unlawful and unenforceable penalty that is unconscionable, both procedurally and substantively, under Florida law and contrary to the public policy of this State. Permanent General's retention of an unearned premium in this manner was improperly intended to punish and/or deter insureds from cancelling, and is unlawful under well-established law governing unenforceable penalties in contracts made in Florida or the return of unearned premiums in insurance policies issued in Florida, such as WEST'S FLA. STAT. ANN. § 627.7283.

74.     Plaintiffs Connor and Pugh and the members of the Florida subclass are entitled to restitution of any unauthorized penalty amounts paid to or otherwise retained by Permanent General, as Permanent General is not entitled to keep these ill-gotten gains. In equity and in good conscious, Permanent General is obligated to provide Plaintiffs Connor and Pugh and the Florida subclass with restitution of any unlawful penalties collected and/or retained by Permanent General.

## COUNT III – RESTITUTION/UNJUST ENRICHMENT OF UNLAWFUL PENALTY
### (on behalf of the California subclass)

75.     Plaintiff Lancaster adopts and incorporates the factual allegations contained in paragraphs 1-62 as if set forth fully herein.

76.     This Count is pled in the alternative to Count I/Plaintiff's Breach of Contract Claim.

77.     Defendant's retention of money that has been paid by the insured and due to be refunded upon cancellation in the manner described in this Third Amended Complaint, i.e. with the deduction of a cancellation fee that is 10% of pro-rata unearned premium and 10% of undisclosed "pro-rated fees," constitutes an unlawful and unenforceable penalty that is

unconscionable, both procedurally and substantively, under California law and contrary to the public policy of California. Defendant's deduction of a cancellation fee in this manner was improperly intended to punish and/or deter insureds from cancelling, and acts as an illegal liquidated damages provision meant to punish any insured who may need or want to drop coverage. Such provision is unlawful under well-established law governing unenforceable penalties in contracts made in California, and Defendant's failure to at least provide a full disclosure of the cancellation fee to be charged prior to each renewal of the Policy is also unlawful under CAL. INS. CODE § 481(c)(1).

78.    Plaintiff Lancaster and members of the California subclass are entitled to restitution of any unauthorized penalty amounts paid to or otherwise retained by Defendant, as Defendant is not entitled to keep these ill-gotten gains. In equity and in good conscious, Defendant is obligated to provide Plaintiff Lancaster and the California subclass with restitution of any unlawful penalties collected and/or retained by Defendant.

### COUNT IV – UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES
#### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
#### (on behalf of the California subclass)

79.    Plaintiff Lancaster adopts and incorporates the factual allegations contained in paragraphs 1-78 as if set forth fully herein.

80.    Plaintiff Lancaster brings this claim individually, on behalf of the California subclass, and on behalf of the general public.

81.    By reason of the conduct and scheme described herein, Defendant engaged in unlawful, deceptive, and unfair business practices within the meaning of CAL. BUS. & PROF. CODE § 17200, *et seq.* Defendant's acts and practices offend an established public policy, and Defendant

engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, including Plaintiff Lancaster and the California subclass.

82.     The unlawful business practices perpetrated by the Defendant and its agents, employees, subsidiaries and contractors include violations of CAL. CIV. CODE § 1572 (actual fraud), CAL. CIV. CODE § 1573 (constructive fraud), CAL. CIV. CODE § 1709 (deceit), CAL. CIV. CODE § 1711 (deceit to defraud public or class), CAL. INS. CODE §§ 330, *et seq.* (concealment), CAL. INS. CODE §§ 350, *et seq.* (representations), CAL. INS. CODE § 780 (misrepresentation of benefits or privileges promised under the terms of an insurance policy), CAL. INS. CODE § 481 (c)(1) (disclosure of provisions to refund premium other than on pro rata basis), and other portions of the California Insurance Code and related regulations and rules. Such acts include, but are not limited to:

a.     issuing policies of insurance without providing a clear disclosure that premiums would be refunded on other than a pro rata basis and how a cancellation fee would be calculated if the insured cancelled the policy or failed to pay his or her premiums;

b.     renewing policies of insurance without providing the required advance disclosure that premiums would be refunded on other than a pro rata basis and how a cancellation fee would be charged if the insured cancelled the policy or failed to pay his or her premiums;

c.     misrepresenting in the Policy and California subclass policies how a refund upon cancellation by the insured or for failure to pay premiums would be determined;

d.     misrepresenting in the Policy and California subclass policies how the cancellation fee charged for cancellation by the insured or for failure to pay premiums would be determined;

e.      failing to disclose that the "10% cancellation fee" is assessed against undisclosed "pro-rated fees"; and

f.      making statements that were known, or should have been known, to be a misrepresentation to a policyholder by an insurer for the purpose of inducing the sale of an insurance policy.

83.    Defendant treated Plaintiff Lancaster and members of the proposed California subclass unfairly.

84.    Defendant's actions, claims, nondisclosures, and misleading statements, as alleged in this Third Amended Complaint, were both likely and intended to deceive Plaintiff Lancaster and members of the public.  Plaintiff Lancaster and the California subclass members have in fact been deceived and relied on Defendant's representations and omissions.  For example, Defendant knew that its refunds and cancellation fees would be based on a percentage of undisclosed "pro-rated fees" in addition to an unearned premium, thereby increasing the cancellation fee or decreasing the refund due to the Plaintiff Lancaster and the California subclass members, as is evident by the breakdown of premium and fees that it provides to insureds following the cancellation of their policy.  Despite its knowledge, Defendant intentionally concealed this fact from Plaintiff Lancaster and the California subclass members.

85.    The fact that Defendant includes undisclosed "pro-rated fees" in its calculation of the refund due or cancellation fee charged to Plaintiff Lancaster and the California subclass members is material information, as evidenced by California law and public policy (*see* CAL. INS. CODE § 481(c)(1)), that was necessary for Plaintiff Lancaster and the California subclass members to make an informed decision about whether to purchase, renew, or cancel an insurance policy with Defendant.  Thus, when purchasing or renewing their insurance policies, Plaintiff Lancaster

and the California subclass members reasonably relied on Defendant to disclose this material information to them.  This reliance has caused harm to Plaintiff Lancaster and the California subclass members.  Plaintiff Lancaster and the California subclass members have suffered injury in fact, have been disadvantaged, and have lost money as a result of Defendant's unlawful, unfair, and deceptive practices.

86.     As a result of its unfairness and deception, Defendant has been able to reap unjust revenue and profit.  Restitution is, therefore, appropriate and Plaintiff Lancaster and the California subclass asks that this Court order restitution.

87.     Plaintiff Lancaster is informed and believes and thereupon alleges that in committing these acts, Defendant acted intentionally, oppressively, maliciously, fraudulently, unlawfully, and unfairly with a conscious disregard of Plaintiff Lancaster's rights, with the intent of benefiting itself financially and with the intent of causing, or recklessly disregarding the probability of causing, injury to the Plaintiff Lancaster and the California subclass.  In so acting, Defendant intended to and did vex, annoy, injure, oppress, and harass the Plaintiff Lancaster and the California subclass.

88.     As a result of Defendant's unlawful, unfair, and deceptive acts, Plaintiff Lancaster and the California subclass members require that this Court restore to Plaintiff Lancaster and the California subclass members any money acquired by unfair competition, including restitution and such other relief that the Court deems just and proper.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a.     that this Court certify this action as a class action; find and conclude that Plaintiffs are appropriate representatives for the class; that Plaintiffs Connor and Pugh are

appropriate representatives of the Florida subclass, and that Plaintiff Lancaster is an appropriate representative of the California subclass; and appoint Plaintiffs' undersigned attorneys as counsel for the classes;

b.      that this Court impose a constructive trust on those monies by which Defendant or its affiliates have been unjustly enriched as a result of the improper practices described in Counts II and III;

c.      that judgment be entered against Defendant in such amount as will fully and adequately compensate Plaintiffs and the other class members;

d.      that this Court enter a judgment on Count I (Breach of Contract) against Permanent General and in favor of Plaintiffs and the members of the class and awarding damages for breach of contract in an amount to be determined at trial;

e.      that this Court enter, in the alternative to a judgment on Count I (Breach of Contract), a judgment on Count II (Restitution/Unjust Enrichment of Unlawful Penalty) against Permanent General in favor of Plaintiffs Connor and Pugh and the members of the Florida subclass and awarding restitution of any unauthorized penalty amounts paid to or otherwise retained by Permanent General;

f.      that this Court enter, in the alternative to a judgment on Count I (Breach of Contract), a judgment on Count III (Restitution/Unjust Enrichment of Unlawful Penalty) against Permanent General in favor of Plaintiff Lancaster and the members of the California subclass and awarding restitution of any unauthorized penalty amounts paid to or otherwise retained by Permanent General;

g.      that this Court enter a judgment on Count IV (Unlawful, Unfair, and Fraudulent Business Practices) against Defendant Permanent General. in favor of Plaintiff

Lancaster and the members of the California subclass and awarding injunctive relief and restitution in an amount subject to proof;

      h.   that Plaintiffs have and recover all interest, attorney's fees, expenses and court costs; and

      i.   that this Court grant such other and further relief as it deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby request a trial by jury of all issues so triable.

Dated: July 9, 2021

/s/ Zachary D. Ludens
Jordan A. Shaw, Esq. (FBN 111711)
Zachary D. Ludens, Esq. (FBN 111620)
**ZEBERSKY PAYNE SHAW LEWENZ, LLP**
110 SE 6th Street Suite 2900
Ft. Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email: jshaw@zpllp.com;
ZLudens@zpllp.com
Secondary Email: medmondson@zpllp.com;
mlomastro@zpllp.com

J. Matthew Stephens (Florida Bar No. 0688649)
James M. Terrell (Admitted *pro hac vice*)
Courtney C. Gipson (Admitted *pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS &
MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, July 9, 2021, I electronically filed the foregoing pleading with the CM/ECF system, which will send notification of such filing to the following:

Reginald J. Clyne, Esq. Florida Bar No.: 654302
Audrey-Jade Salbo, Esq. Florida Bar No.: 119370
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
9300 S. Dadeland Blvd., 4th Floor Miami, FL 33156
Telephone: 305-670-1101
Facsimile: 305-670-1161
Email: rclyne.pleadings@qpwblaw.com
　　　　Reginald.clyne@qpwblaw.com
　　　　audrey-jade.salbo@qpwblaw.com
　　　　stephanie.clavijo@qpwblaw.com
　　　　Cecilia.quevedo@qpwblaw.com

*(Attorneys for Permanent General Assurance Corp.)*

　　　　　　　　　　　　　　　/s/ Zachary D. Ludens_____
　　　　　　　　　　　　　　　Zachary D. Ludens