IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:20-CV-81979-WPD

DORINE L. CONNOR and
MYRTLE E. PUGH,
Individually and on behalf
of all other similarly situated,

    Plaintiffs,

v.

PERMANENT GENERAL ASSURANCE
CORP.,

    Defendant.
_____/

## **DEFENDANT, PERMANENT GENERAL ASSURANCE CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, PERMANENT GENERAL ASSURANCE CORP. ("PGAC" and/or "Defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56(c), files this Motion for Summary Judgment, seeking a judgment as a matter of law against Plaintiffs, DORINE L. CONNOR ("Connor') and MYRTLE E. PUGH ("Pugh"). Defendant's Statement of Material Facts is filed simultaneously in compliance with Local Rule 56.1.

## **OVERVIEW OF CLAIMS**

PGAC is an insurance company provider for auto insurance and issued a 12 month automobile insurance policy to Plaintiffs, Connor and Pugh. **[ECF No. 81], ¶ 1-3.** The Connor Policy had an effective date of September 24, 2019 and an expiration date of September 24, 2020. Due to a leap year, the term of the policy had a total of 366 days. **[ECF No. 81, ¶ 14].** The Pugh Policy had an effective date of July 22, 2020 and an expiration date of July 22, 2021. Pugh's policy term had a total of 365 days. **[ECF No. 81, ¶ 32].**

Both Connor and Pugh chose to cancel their policies. Connor cancelled her policy on May 26, 2020. and Pugh cancelled hers on August 19, 2020. **[ECF No. 81, ¶ 17, 18, 34].**

Pursuant to the applicable Policy Terms, PGAC timely credited Connor and Pugh's accounts with unearned premium. After crediting Connor's account, PGAC issued her a refund

in the amount of $152.86. **[ECF No. 81, ¶ 29].** Pugh's account was similarly credited with the unearned premium remaining on her policy. However, after the credit was applied to Pugh's account, she still owed PGAC a total of $596.39 on the policy. Policy holders like Pugh and Connor, who elected to pay their total premium on a monthly basis, can have an outstanding balance if they cancel their policies early. This outstanding balance accounts for premiums due for the remaining months of the policy. **[ECF No. 81], ¶** 47. PGAC sent Pugh a Collection Letter for her outstanding balance of $596.39. **[ECF No. 81], ¶** 41, 42. To date, Pugh has not paid this outstanding balance to PGAC. **[ECF No. 81], ¶** 41, 42.

Plaintiffs have sued PGAC for Breach of Contract (Count I) and Restitution/Unjust Enrichment of Unlawful Penalty (Count II) in the alternative, alleging that PGAC refunded them an incorrect premium refund amount. **[ECF No. 67].** In their Third Amended Complaint ("Complaint"), Connor alleges that she was entitled to a refund in the amount of $200.00 and Pugh alleges that she was due a refund of $40.00. **[ECF No. 67], ¶** 27, 28**.** In Plaintiffs' Responses to PGAC's Interrogatories, Connor subsequently alleged that she was entitled to a $216.00 refund and Pugh alleged that she was now entitled to a refund in the amount of $21.83. **[ECF No. 81], ¶** 44. Plaintiffs further allege that "each Plaintiff understood and expected that, at worst, the refund of unearned premium due to be returned to her would be provided at 90% of the pro rata *return premium* amount due back to each Plaintiff." **[ECF No. 81], ¶** 44.

Plaintiffs are mistaken. PGAC correctly refunded Plaintiffs using an accurate and computer generated calculation that was based upon the terms of their Policy. Put quite simply, Plaintiffs calculate the math incorrectly, which is the reason they keep changing the amount they are owed, as evidenced by the inconsistent amounts listed in their Complaint versus their interrogatory responses. **[ECF No. 81], ¶** 43, 44. Additionally, in their interrogatory responses, Plaintiffs allege, without any support whatsoever, that "each Plaintiff understood and expected that, at worst, the refund of unearned premium due to be returned to her would be provided at 90% of pro rata ***return premium*** amount due back to each Plaintiff." **[ECF No. 81], ¶** 44. First, Plaintiffs fail to provide an explanation or identify what they mean by "return premium." Additionally, regardless of the absence of an explanation, PGAC's Policy Terms do not state that Plaintiffs are entitled to 90% of the pro rata ***return*** premium or that the 90% pro rata was to be calculated on the monthly remaining payments of a policy, as Plaintiffs appear to be alleging in their depositions. **[ECF No. 81], ¶** 45, 46. PGAC's Policy Terms state that if a policy holder

cancels his or her policy, PGAC will "refund 90% of the pro rata unearned premium." **[ECF No. 81], ¶ 6.** The policy is clear and unambiguous. As such, PGAC did not materially violate any term of its contract with Plaintiffs Connor and Pugh and is entitled to Summary Judgment on Plaintiffs' Breach of Contract Claim (Count I) and Restitution/Unjust Enrichment of Unlawful Penalty Claim (Count II) as a matter of law.

## MEMORANDUM OF LAW

### A. Legal Standard.

Summary judgment is authorized if there is no genuine issue of material fact to be tried, and the moving party is entitled to judgment as a matter of law. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

To survive summary judgment, the opposing party cannot rest on its pleadings but must instead designate specific record evidence sufficient to establish each element of his or her claim. *Earley,* 907 F.2d at 1080; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Kee,* 918 F.2d at 1540. The failure of substantial proof on any element of the claim renders all other elements immaterial and requires the entry of summary judgment. *Celotex Corp.*, 477 U.S. at 322-23.

A factual dispute is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The mere existence of a scintilla of evidence in support of the non-movant's position is not enough to defeat a summary judgment motion; rather, sufficient evidence must exist upon which the jury may reasonably find for the non-movant. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Similarly, inferences based on speculation or conjecture are not reasonable and will not be sufficient to defeat summary judgment. *Blackston v. Shook and Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985).

### B. PGAC is entitled to Summary Judgment on Count I because it did not Materially Breach its Contract with Plaintiffs.

PGAC is entitled to summary judgment on Count I of Plaintiffs' Complaint because it properly refunded 90% of the Plaintiffs' pro rata unearned premium per the clear and unambiguous Policy Terms. "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). It is undisputed that a contract exists between Plaintiffs and PGAC, as admitted to by Plaintiffs in their Complaint. **[ECF 67],** ¶ 64. With regard to the second element, whether PGAC committed a material breach of its contract with Plaintiffs, Plaintiffs allege PGAC committed a material breach by calculating premium refunds due to insureds on something other than unearned premium less a 10% cancellation fee or charging a cancellation fee greater than 10% of pro-rata unearned premium when policies are cancelled at the insured's request or for nonpayment of premium, and calculating premium refunds due to insureds on something other than 90% of the pro rata unearned premium when policies are cancelled at the insured's request. **[ECF 67].** Plaintiffs have provided no support for their allegations that PGAC calculated their premium refunds on "something other than 90% of the pro rata unearned premium." Plaintiffs appear to calculate their math incorrectly, which is the reason they keep changing the amount of refunds they allege there are owed. **[ECF No. 81],** ¶ 43, 44. Because PGAC's Policy Terms with regard to unearned premium refunds when a policy holder cancels their policy are clear and unambiguous and PGAC did refund 90% of Plaintiffs' pro rata unearned premiums, PGAC is entitled to summary judgment on Count I as a matter of law, as further detailed below.

> ***a.   The Operative Policy Terms are Not Ambiguous.***

Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. *See Fabricant v. Kemper Independence Ins. Co.,* 474 F. Supp. 2d 1328 (Fla. S. D. 2007). As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court. *Id.* The scope and extent of insurance coverage is defined by the language and terms of the insurance policy, and where the language of a policy is plain and unambiguous, the contract must be enforced as written. *See Id.; see also Siegle v. Progressive Consumers Ins. Co.,* 819 So. 2d 732, 734-35 (Fla. 2002). An ambiguous policy must have a genuine inconsistency, uncertainty or

ambiguity in meaning after the court has applied the ordinary rules of construction. *Graspa Consulting, Inc. v. United National Insurance Company,* 515 F. Supp. 3d 1249 (S.D. Fla. 2021). "Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous." *Id; Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co.,* 2009 WL 700246 at *4 (S.D. Fla. Mar. 17, 2009). Ultimately, "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.,* 254 F. 3d 987, 1003 (11th Cir. 2001).

In this case, the applicable Provision G, titled *Refund of Premium,* is plain and unambiguous. Provision G(2) specifically states as follows:

> "**G. Refund of Premium.**
>
> 1. Upon cancellation "you" may be entitled to a refund of unearned premium. Making a premium refund is not a condition of cancellation.
>
> 2. **If the cancellation is at "your" request, "we" will refund 90% of the pro rata unearned premium.**
>
> 3. If the policy is canceled at "our" request, "we" will make a pro rata refund of any unearned premium."

**[ECF No. 81],** ¶ 6; **[ECF No. 67],** ¶ 37.

During her deposition, Pugh testified that she received the Policy Terms, read provision G upon receipt and agreed to the terms included upon obtaining coverage with PGAC. **[ECF No. 81],** ¶ 7. Connor also testified that she received the Policy Terms and read Provision G upon receipt. **[ECF No. 81],** ¶ 8.

Provision G's clear and plain language addresses the calculation of Plaintiff's refund of unearned premium following their cancellation of the policy prior to the expiration of the duration of their policies. Plaintiffs' "premiums" are listed on their declaration pages. Both Plaintiffs testified that they received these declaration pages. **[ECF No. 81],** ¶ 16, 30, 31. The "unearned premium" is that portion of the written premium applicable to the unexpired or unused

part of the period for which the premium has been calculated.[1] In this case, the "unearned premium" is based on the number of days remaining in the policy period as of the date of cancellation, *i.e.,* the premium that has not been "earned" or "used" due to Plaintiffs' early cancellation of the policy. As in its common definition and usage, pro-rata means "proportionate to the whole," here meaning proportionate to the whole policy premium amount.[2]

Pursuant to these clear and unambiguous policy terms, the pro rata unearned premium is calculated by counting the number of days remaining in the policy period following the policy cancellation date. **[ECF No. 81],** ¶ 19-41. To determine the pro-rata factor, the total number of days remaining in the term is divided by the total amount of days in the full policy period. **[ECF No. 81],** ¶ 23 ,36. Connor. The pro-rata factor is then multiplied by .9 (or 90%) to determine 90% of the pro-rata factor. (Ex. B, Shell Affidavit, ¶ 1-30). 90% of the pro-rata factor is then multiplied by the full-term premium at the time of cancellation, which generates a credit the policy holder is entitled to. **[ECF No. 81],** ¶ 25, 37. The 90% unearned premium is then subtracted from any outstanding balances of the policy premium. Policy holders are then refunded any amounts owed to them after the credit is applied to their accounts. **[ECF No. 81],** ¶ 27-29. As stated above and as explained by Mr. Shell in his affidavit, Policy holders like Connor and Pugh, who elected to pay their premiums on a monthly basis, can have outstanding balances if they chose to cancel a policy early. This balance accounts for premiums due for the remaining months of a policy. **[ECF No. 81],** ¶ 27.

The PGAC policy terms sent to each insured are approved by the State of Florida, including Provision G, titled *Refund of Premium,* which gives PGAC the ability to refund 90% of the pro rata unearned premium if an Insured cancels their policy. **[ECF No. 81],** ¶ 12. Connor Florida Statute Section 627.7283(4) allows for PGAC to retain 10% of unearned premium. Subsection (4) states as follows:

> "if the insured cancels, the insurer may retain up to 10 percent of the unearned premium and must refund at least 90 percent of the unearned premium . . . for purposes of this section, **unearned premiums must be computed** on a **pro rata basis**."

*See Fla. Stat. §* 627.7283(4).

---

[1] *See* definition of "Pro-Rata Cancellation" in International Risk Management Institute, Inc. (IRMI Glossary, at https://www.irmi.com/term/insurance-definitions/pro-rata-cancellation )
[2] *See Id.*

In their Complaint, Plaintiffs do not make any allegations regarding how they arrived at their calculations that Connor was owed $200.000 and Pugh $40.00. **[ECF No. 67]**, ¶ 27, 28. In their interrogatory responses, Plaintiffs stated "each Plaintiff understood and expected that, at worst, the refund of unearned premium due to be returned to her would be provided at 90% of the pro rata *return premium* amount due back to each Plaintiff." **[ECF No. 81]**, ¶ 44. The Policy Terms do not mention any pro rata "return premium." In their depositions, both Plaintiffs appear to make the argument that PGAC's Policy Terms indicate that the 10% short rate should only be applied to the unearned monthly premium payments. **[ECF No. 81]**, ¶ 45-46.

Plaintiffs' interpretation of the Policy Terms is incorrect. Plaintiffs are creating their own calculation by adopting an interpretation of Provision G that both contradicts the clear language of the policy and is inconsistent with the accepted meaning, understanding, and practices with respect to the term "pro rata" in this insurance context and the determination of unearned premium refund amounts. As stated in the policy and as obligated by Fla. Stat. §627.7283(4), unearned premiums ***must be computed on a pro rata basis***, here meaning proportionate to the whole policy premium amount, not the remaining monthly unearned premiums as apparently alleged by Plaintiffs.

### b. PGAC Refunded 90% of Pugh and Connor's Pro Rata Unearned Premium per Policy Terms.

As evidenced by Mr. Shell's affidavit and corresponding exhibits explaining how the unearned refunded premium was determined, both Connor and Pugh were refunded 90% of their pro rata unearned premium per the terms of their policy. **[ECF No. 81]**, ¶ 19-41. The calculation of the unearned premium is the same whether calculated on a "90% of pro rata" basis, or alternatively calculating the corresponding 10% "short rate" amount.

With regard to Connor, her policy had an effective date of September 24, 2019 and an expiration date of September 24, 2020. Due to a leap year, the term of the policy had a total of 366 days. **[ECF No. 81]**, ¶ 14. On May 9, 2021, Connor amended her policy to remove Robert D. Connor and add a new vehicle **[ECF No. 81]**, ¶ 15, which generated a new premium, and then cancelled her policy on May 26, 2020. **[ECF No. 81]**, ¶ 16, 17. On May 26, 2020, Connor's full term policy premium totaled $2,681.00. **[ECF No. 81]**, ¶ 19.

When Connor canceled her policy on May 26, 2020, Connor had 121 days left in her policy's term. There were therefore 121 days of unearned premium by PGAC (because it did not

provide Connor coverage for those days). **[ECF No. 81]**, ¶ 22. To determine the pro-rata factor, the computer divides the total amount of days left in the term, 121, by the total amount of days in the full term, 366. The pro-rata factor for Connor's policy is therefore .330601 (121/366 = .330601). **[ECF No. 81]**, ¶ 23. Because Connor cancelled her policy, she was only entitled to 90% of the unearned pro-rata premium. As such, the pro-rata factor (.330601) is multiplied by .9 (or 90%) and 90% of the pro-rata factor totals .297541 (.330601 X .9 = .297541). **[ECF No. 81]**, ¶ 24. 90% of the pro-rata factor, .297541 is then multiplied by the full-term premium, $2,681.00, which generates a credit to the policy. In this case, Connor was entitled to a credit of $797.71 (.297541 x $2,681.00 = $797.71). **[ECF No. 81]**, ¶ 25.

As indicated on Line 70 of the I Series print out pertaining to Connor (attached as exhibit A to Mr. Shell' Affidavit) titled "*Short CA*" or Short Rate, Connor's account was credited $799.00. **[ECF No. 81]**, ¶ 26. Connor had a remaining balance of $646.14 at the time of cancellation. Connor did not pay her total premium in one lump sum and instead, elected to pay her premium on a monthly basis. This balance accounts for the balance owed on the policy at the time of cancellation (it accounts for premiums due for the remaining months of Connor's policy.). **[ECF No. 81]**, ¶ 27. Connor was credited $799.00 and issued a check in the amount of $152.86 ($799.00 -$646.14 = $152.86). **[ECF No. 81]**, ¶ 28. As such, Connor's unearned premium was refunded in accordance with the Policy Terms and as authorized by the State of Florida.

The same is true with regard to Plaintiff Pugh. Pugh's policy had an effective date of July 22, 2020 and an expiration date of July 22, 2021. Pugh's policy term had a total of 365 days. **[ECF No. 81]**, ¶ 32. Pugh's full-term premium (for 365 days of coverage) for her policy is listed next to "Amount" on the I Series print out attached to Mr. Shell's Affidavit and totaled $6,718.00. This amount is also listed on Pugh's Declaration Page for the July 22, 2020 to July 22, 2021 Policy Period. **[ECF No. 81]**, ¶ 29. Pugh's cancelled her policy on August 19, 2020. **[ECF No. 81]**, ¶ 35. When Pugh canceled her policy on August 19, 2020, Pugh had 337 days left in her policy's term. She therefore had 337 days of unearned premium. **[ECF No. 81]**, ¶ 36.

To determine the pro-rata factor, the computer divides the total amount of days left in the term, 337, by the total amount of days in the full term, 365. The pro-rata factor for Pugh's policy is therefore .923288 (337/365 = .923288). **[ECF No. 81]**, ¶ 36. Because she cancelled her policy, Pugh was entitled to 90% of the unearned pro-rata premium. As such, the pro-rata factor

(.923288) is multiplied by .9 (or 90%) and 90% of the pro-rata factor totals .830959 (.923288 X .9 = .830959). **[ECF No. 81], ¶ 37**. 90% of the pro-rata factor, .830959 is then multiplied by the full-term payment, $6,718.00, which generates a credit to the policy holder. In this case, Pugh was entitled to a credit of $5,582.00 (.830959 x $6,718.00 = $5,582.00) **[ECF No. 81], ¶ 37**. As indicated on Line 142 of the I Series print out pertaining to Pugh (attached as exhibit B to Mr. Shell's Affidavit), titled "*Short CA*" or Short Rate, Pugh's account was credited in the amount of $5,582.00. **[ECF No. 81], ¶ 38**.

At the time of cancellation, Pugh had a remaining unpaid balance of $6,178.39 and therefore did not receive a refund. **[ECF No. 81], ¶ 39, 40**. Pugh did not pay her total premium in one lump sum and instead, elected to pay her premium on a monthly basis. This balance accounts for the remaining balance owed on the policy at the time of cancellation (it accounts for the balance due for the remaining months of Pugh's policy). For this reason, Pugh was sent a collection letter for the outstanding amount owed of $596.39 ($6,178.39 - $5,582.00 = $596.39). To date, Pugh has not paid this outstanding amount to PGAC. **[ECF No. 81], ¶ 40-42**.

To survive summary judgment, Pugh and Connor cannot rest on their pleading but must instead designate specific record evidence sufficient to establish each element of their claim. *See Earley,* 907 F.2d at 1080; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Kee,* 918 F.2d at 1540. Although alleging that they were improperly refunded, Pugh and Connor have failed to provide any substantial proof that PGAC improperly refunded their unearned premium and therefore materially breached their contract. On at least two occasions, Plaintiffs have provided two different amounts for the refund they alleged they were owed. From these basic math mistakes, it is clear that plaintiff does not know how to perform the basic mathematical formula to calculate refunds on unearned premiums. Plaintiffs have also failed to take into account changes to the coverage, when a party or vehicle is dropped. Plaintiffs have also failed to account for the fact that they were making monthly payments and not a lump sum payment, and therefore owed money to PGAC, because at the time of cancellation they had not made payments. Plaintiffs have also failed to provide substantial proof as to the third element of a breach of contract claim, that they suffered damages. In the case of Pugh, she was not damaged as she owes PGAC over $500.00. The failure of substantial proof on any element of the claim renders all other elements immaterial and requires the entry of summary judgment. *See Celotex Corp.*, 477 U.S. at 322-23. Because Plaintiffs have failed to provide substantial proof that PGAC

failed to refund them 90% of the pro rata unearned premium per the Policy Terms, PGAC is entitled to summary judgment on Count I as a matter of law.

### C. **Plaintiffs' Restitution/Unjust Enrichment Of Unlawful Penalty Claim fails as a Matter of Law.**

#### a. *An Express Contract Exist between Connor and PGAC and Pugh and PGAC.*

PGAC is also entitled to summary on Count II as Plaintiffs have admitted that an express contract exists between Plaintiffs and PGAC. Florida law allows for breach of contract and unjust enrichment claims to be plead in the alternative. *See Baptist Hosp. of Miami, Inc.* v. *Medica Healthcare Plans, Inc.,* 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019). However, upon a showing that an express contract exists between the parties, an unjust enrichment claim fails. *See Toca v. Tutco, LLC, 430 F. Supp. 3d 1313 (*Fla. S.D. Mar. 4, 2020)(holding "a plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing plaintiff's rights . . . thus, under Florida law, unjust enrichment is an equitable remedy which necessary fails upon a showing that an express contract exists"); *in Re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.,* 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013); *see also William Ryan Homes Fla., Inc. v. Whitney Nat'l Bank,* No. 8:12-CV-1575-T-33TGW, 2012 WL 4328769, at *5 (M.D. Fla. Sept. 30, 2012) (finding that because "the parties do not contest (1) that a valid contract exists between William Ryan Homes and Whitney National Bank and (2) that the instant dispute arises out of this contractual relationship," the plaintiff could not also assert a claim for unjust enrichment). "It is upon a showing that an express contract exists that the unjust enrichment . . . count fails. Until an express contract is proven, a motion to dismiss a claim for . . . . unjust enrichment on these grounds is premature." *Frayman v. Douglas Elliman Realty, LLC,* 515 F. Supp. 3d 1262 (S.D. Fla. Jan. 25, 2021)(citing *Mobil Oil Corp. v. Dade Cnty Esoil Mgmt. Co.*982 F. Supp. 873, 880 (S.D. Fla. 1997); *see also Stock Fraud Prevention, Inc. v. Stock News Info, LLC,* No. 11-80764-Civ, 2012 WL 664381, at *10 (S.D. Fla. Feb. 28, 2012)("At the pleading stage, Plaintiff is not precluded from pleading claims for both breach of contract and money had and received.")

Because this case is now beyond the pleadings stage and at the summary judgment stage and because both Plaintiffs have testified that they have received the Policy Terms in their

depositions and insurance policies constitute a contract per Florida law, Plaintiffs are barred from making a claim for unjust enrichment. PGAC is therefore also entitled to summary judgment on Count II as a matter of law.

### b. Plaintiffs Failed to Comply with Section 624.155(1)(a)(6), Florida Statutes.

In the addition to the presence of an express contract between PGAC and Plaintiffs, Count II of Plaintiffs' Complaint should also be dismissed as Plaintiffs have failed to comply with Section 624.155(1)(a)(6)'s requirement that Plaintiffs provide 60-days' written notice to the Department of Insurance and the Insurer of their intent to bring suit. Section 624.155(1)(a)(6), *Florida Statutes* (2020), provides that a person may bring a civil action against an insurer when such person is damaged by a violation of certain enumerated statutes, including section 627.7283. Further, section 624.155(3)(a), *Florida Statutes*, provides that "as a condition precedent to bringing an action under this section, the department and the insurer must have been given 60 days' written notice of the violation." *See Stinson v. United Auto. Ins. Co.,* 734 So. 2d 505 (Fla. 3d DCA 1999)(holding trial court properly dismissed plaintiffs' cause of action for violation of section 627.7283 because the plaintiffs failed to give the requisite 60-day notice to the Department of Insurance and to the insurer of their intent to bring a civil action as a result of an alleged violation of section 627.7283).

In their Complaint, Plaintiffs have alleged that PGAC's retention of an unearned premium to be refunded at "90% of the pro rata unearned premium" when policies are cancelled at an insured's request" is unlawful and in violation of Fla. Stat. § 627.7283. **[ECF No. 67], ¶** 73-74. Section 627.7283 is one of the enumerated statutes in Fla. Stat. § 624.155 and requires Plaintiffs to provide 60-days written notice, which Connor and Pugh have failed to do in this case. In her deposition, Pugh admitted that she never complained to PGAC or notified them that she intended to file suit. **[ECF No. 81], ¶** 47. To date, Connor has failed to provide any documents reflecting her compliance with the 60-day notice requirement in order to allege a violation of section 627.7283. Based on the foregoing, PGAC is also entitled to summary judgment on Count II of Plaintiffs' Complaint as a matter of law.

**CONCLUSION**

There is no genuine issue of material fact which would preclude the entry of final judgment. The record evidence is clear that an express contract existed between Plaintiffs and PGAC and that PGAC refunded Connor and Pugh 90% of their pro rata unearned premium. Plaintiffs' allegations, without any supporting record evidence, that the 90% pro rata unearned premium should have been calculated for the remaining months of their policies is without merit and contrary to the proper interpretation and definition of "pro rata" and the Policy Terms. Moreover, Plaintiffs are barred from alleging Count II because they have admitted that a contract exists between them and PGAC and failed to provide the 60-day written notice required per statute in order to assert a claim for a violation of Fla. Stat. 627.7283. As such, PGAC is entitled to summary judgment as a matter of law.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December, 2021 the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day to James M. Terrell, Esq., Methvin, Terrell, Yancey, Stephens & Miller, P.C., 2201 Arlington Avenue South, Birmingham, AL 35205 at jterrell@mtattorneys.com, attorneys for Plaintiff, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By: /s/ *Audrey-Jade Salbo*
Reginald J. Clyne, Esq.
Florida Bar No.: 654302
Audrey-Jade Salbo, Esq.
Florida Bar No.: 119370
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
*Attorneys for Defendant, Permanent General Assurance Corp*
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: (305) 670-1101

       Fax: (305) 670-1161
Email: rclyne.pleadings@qpwblaw.com
       Reginald.clyne@qpwblaw.com
       audrey-jade.salbo@qpwblaw.com
       jhoanna.carrascal@qpwblaw.com
       Cecilia.quevedo@qpwblaw.com