UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:20-CV-81979-WPD

DORINE L. CONNOR, and
MYRTLE E. PUGH,
Individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

PERMANENT GENERAL ASSURANCE
CORP.,

      Defendant.

_____/

## <u>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

THIS CAUSE is before the Court on Plaintiffs Dorine L. Connor ("Connor") and Myrtle

E. Pugh ("Pugh") (collectively, "Plaintiffs")'s Motion for Class Certification [DE 82] (the

"Motion").[1]  The Court has carefully considered the Motion, Defendant Permanent General

Assurance Corp. ("PGAC" or "Defendant")'s Response in Opposition [DE 87], Plaintiffs' Reply

[DE 90], the exhibits submitted in the record, and is otherwise fully advised in the premises.

---

[1] On December 13, 2021, the same day Plaintiffs moved for class certification, Defendant filed a Motion for Summary Judgment. *See* [DE 80]. In complying with the Eleventh Circuit's guidance on the issue of whether it should address the motions together, the Court will consider separately Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Class Certification and exercise its discretion to consider the class certification issue first. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("It [is] within the court's discretion to consider the merits of the claims before their amenability to class certification."); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215–16 (11th Cir. 2003) (reversing a district court that mistakenly "thought that its decision granting [a defendant] summary judgment automatically disposed of the class certification issue"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.21 (11th Cir. 2009) ("The district court could have prevented, or at least reduced, this confusion by keeping the class certification determination both conceptually and temporally distinct from its merits ruling on summary judgment.").

.

# I.   <u>BACKGROUND</u>

Plaintiff Printa Finley ("Finley") filed a putative class action against PGAC and Nation Motor Club, LLC d/b/a Nation Safe Drivers ("NSD") on October 27, 2020, which she replaced on December 11, 2020 with an Amended Class Action Complaint. *See* [DEs 1, 17].  On January 25, 2021, Finley filed a Second Amended Class Action Complaint, adding Dorine Connor and Myrtle Pugh as plaintiffs. *See* [DE 37]. Finley voluntarily dismissed her claims against PGAC and NSD on March 4, 2021. *See* [DE 47]. As Finley was the only Plaintiff with a claim against NSD, NSD was dismissed from the action. *See* [DE 50]. On July 9, 2021, Plaintiffs Connor and Pugh filed a Third Amended Compliant ("TAC"), the operative complaint, to add Matthew K. Lancaster ("Lancaster") to represent a nationwide class and California subclass. *See* [DE 67]. The Third Amended Complaint alleged four counts: Count I for breach of contract; Count II for restitution/unjust enrichment of unlawful penalty (on behalf of the Florida subclass); Count III for restitution/unjust enrichment of unlawful penalty (on behalf of the California subclass); and Count IV for unlawful, unfair and fraudulent business practices (on behalf of the California subclass).  *Id.* On November 18, 2021, the Court dismissed all claims brought by Lancaster for lack of personal jurisdiction over Defendant. *See* [DE 78].  Accordingly, Plaintiffs Connor and Pugh are proceeding solely on Counts I and II.

PGAC markets, sells, and underwrites non-standard automobile insurance throughout the United States, including in Florida. *See* TAC ¶¶ 1, 12. Non-standard automobile insurance is typically procured by those customers who, due to financial constrains or otherwise, are unable to afford coverage through standard carriers. *Id.* at ¶ 13. In the non-standard automobile insurance market, it is not uncommon for policies to cancel. *Id.* at ¶ 1. As such, Plaintiffs assert

that it is important that consumers be given clear, advance notice of the potential or existence of any fees or penalties that the consumer may incur upon cancellation. *Id.* at ¶ 18.

Plaintiffs bring this action on behalf of a nationwide class and Florida subclass, encompassing former PGAC policyholders who they claim were victims of an improper premium refund scheme perpetrated by PGAC. *Id.* at ¶¶ 52–53. The two named Plaintiffs each allege PGAC calculated premium refunds due in a manner inconsistent with applicable policy language and improperly assessed an undisclosed and unlawful penalty, all in breach of PGAC's contract with each Plaintiff. *Id.* at ¶¶ 5–6, 48–49.

Plaintiffs' claims arise out of PGAC's assessment and collection of a penalty known as a "Short Rate Cancellation Premium" upon cancellation. Plaintiffs assert that none of their policy documents reference the term "Short Rate Cancellation Premium," nor do they reference the term "penalty" or "cancellation fee." Plaintiffs argue that, despite PGAC's lack of reference to such a penalty in the policy documents, the way PGAC calculates its penalty and unearned premium refunds due to be paid upon cancellation is at odds with the following policy language:

**CANCELLATION AND NON-RENEWAL.**
. . . .

**G. Refund of Premium.**

1. Upon cancellation "you" may be entitled to a refund of unearned premium. Making a premium refund is not a condition of cancellation.

2. If the cancellation is at "your" request, "we" will refund 90% of the pro rata unearned premium.

3. If the policy is canceled at "our" request, "we" will make a pro rata refund of any unearned premium.

Connor Policy, [DE 82-2] at p. 15; Pugh Policy, [DE 82-3] at p. 15; TAC ¶ 25. According to Plaintiffs, based on a reasonable reading of this provision, Plaintiffs understood, expected, and

believed that the refund of unearned premium due to be returned to them would be provided at 90% of the pro-rata return premium due back to Plaintiffs. TAC ¶ 26. In other words, Plaintiffs expected at worst a 10% charge against the unearned premium that plaintiffs had previously paid to PGAC and was still held by PGAC.

According to Plaintiffs, PGAC instead improperly deducted a "Short-Rate Cancellation Premium" based upon 10% of premiums never paid by the insured, never held by PGAC, and not due to be paid back to the insured, in violation of the governing contractual language. The Court briefly summarizes the claims of each named Plaintiff in more detail:

Plaintiff Dorine L. Connor renewed her non-standard automobile insurance policy with PGAC for the period from September 24, 2019 to September 24, 2020. [DE 67] at ¶¶ 19–20. Connor paid the down payment to renew her policy and thereafter timely and accurately paid her monthly premium of $259 to PGAC until she chose to cancel her policy on May 26, 2020. *Id.* at ¶¶ 20–21. According to Connor, the pro rata amount of unearned premium previously paid by Connor and still held by PGAC at the time of her cancellation was around $240. [DE 82-5] at 5. Ninety percent of this pro rata unearned premium is $216, which is the amount Connor alleges she should have been refunded by PGAC. *Id.* Instead, Connor claims that PGAC assessed a penalty of $88.63 and refunded Connor only $152.86, which penalty was derived by assessing 10% against four months of unearned premium never paid by Connor and never held by PGAC.

Plaintiff Myrtle Pugh renewed her non-standard automobile insurance policy with PGAC for the period from July 22, 2020 to July 22, 2021, with a monthly premium amount of $579.89. *Id.* at ¶ 23. Pugh paid the down payment of $594.61 to renew her policy but cancelled the policy on August 19, 2020. *Id.* at ¶¶ 23, 28. According to Pugh, the pro rata amount of unearned premium previously paid by Pugh and still held by PGAC at the time of her cancellation was

$24.26. [DE 82-5] at 5–6. Ninety percent of this pro rata unearned premium is $21.83, which is the amount Pugh alleges she should have been refunded by PGAC. *Id.* Instead, Pugh claims that PGAC assessed a penalty of $620, which was derived by assessing 10% against eleven months of unearned premium never paid by Pugh and never held by PGAC. PGAC retained the $24.26 pro rata unearned premium previously paid by Pugh and then sent Pugh a collection letter seeking the remaining $596 balance of PGAC's penalty. *See* [DE 67-3].

Based on PGAC's contracts with each Plaintiff and the business practices described *supra*, Plaintiffs assert a claim for breach of contract and a claim in the alternative for restitution/unjust enrichment of unlawful penalty. *See* [DE 67] at ¶¶ 63–74. Plaintiffs now seek class certification of a Florida class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).[2]

## II.   <u>STANDARD OF REVIEW</u>

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). Although a district court is not to determine the merits of a case at the certification stage, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 1570 n.11 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). A court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006). Therefore, "before a district court determines the efficacy of class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does

---

[2] Though Plaintiffs allege a nationwide class and Florida subclass in their Third Amended Complaint, Plaintiffs indicate that they are moving for certification only as to the Florida class. *See* [DE 82] at 1 n.1.

not mean that it has erroneously 'reached the merits' of the litigation." *Cooper v. S. Co.*, 390

F.3d 695, 712-713 (11th Cir.2004) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718,

722 (11th Cir. 1987)).

Parties seeking class action certification must satisfy the four requirements of Rule 23(a),

commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Specifically, the four requirements

of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).  The party moving for class certification bears the burden of establishing

each element of Rule 23(a). *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003).

If the party seeking class certification fails to demonstrate any single requirement, then the case

may not continue as a class action. *Jones v. Roy*, 202 F.R.D. 658, 662 (M.D. Ala. 2001).

If the plaintiff satisfies the requirements of Rule 23(a), it must also satisfy one of the

three subsections of Rule 23(b). *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997).

Rule 23(b)(3)—the provision on which Plaintiffs rely—"permits class certification if 'the court

finds that the questions of law or fact common to class members *predominate* over any questions

affecting only individual members, and that a class action is *superior* to other available methods

for fairly and efficiently adjudicating the controversy.'" *Little v. T-Mobile, USA, Inc.*, 691 F.3d

1302, 1304 (11th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original).

The moving party "must affirmatively demonstrate his compliance" with the class

certification requirements. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (quoting *Wal–Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, (2011)).  That is, "a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*  "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

For the reasons discussed below, the Court is satisfied that the requirements for a class action have been met.

## III.    <u>DISCUSSION</u>

Plaintiffs seek certification of the following class:

> All citizens residing in the State of Florida, who, within five (5) years of the filing of this action, were (1) insured under an auto policy sold or issued by Permanent General containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non-Renewal" section as found in Plaintiffs Connor's and Pugh's policies, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by Permanent General and still unearned on the effective date of cancellation.

[DE 82] at 1; [DE 67] at ¶ 53.

For the following reasons, the Court finds that class certification is warranted under Rule 23(a) and Rule 23(b)(3).

### A. Ascertainability

"Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks omitted)). A plaintiff must demonstrate that its proposed class is adequately defined and clearly

ascertainable before a court can analyze whether the requirements of Rule 23(a) are met. *Little*, 691 F.3d at 1304. "A class is clearly ascertainable if we are certain that its membership is capable of being determined." *Cherry v. Dometic Corp.*, No. 19-13242, 2021 WL 346121, at *4–5 (11th Cir. Feb. 2, 2021) (internal quotations omitted) (holding "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination.").

Upon careful review, the Court finds that the class is ascertainable. Plaintiff's class definition sets out objective criteria for determining who is a member of the class. Moreover, Defendant admits that it can identify each of its policyholders in Florida that have been assessed a "Short Rate Cancel Fee" during the class period defined in Plaintiffs' Third Amended Complaint. *See* [DE 82-9] at 1; [DE 82-1] at 83:17–84:11. Defendant's opposition does not challenge the ascertainability of the proposed class.

### B. Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Therefore, "[a] plaintiff must present some evidence that the class to be certified will satisfy the numerosity requirement of Rule 23." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672 (S.D. Fla. 2012). With respect to this requirement, "[t]he Eleventh Circuit has held that '[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v.*

*Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Amer. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)).

Plaintiff has satisfied the numerosity requirement in the present case.  Plaintiff points to PGAC's admission that from 2014 to the 2021, more than 100 of PGAC's customers in Florida were charged a "Short Rate Cancel Fee." [DE 82-13] at 1. The Court rejects PGAC's argument that numerosity is not satisfied because Plaintiffs Connor and Pugh were not added to the action until January 25, 2021, making the appropriate class period within five years of January 25, 2021. *See* [DE 37]. Numerosity is "generally a low hurdle" and PGAC's admission that more than 100 of PGAC's customers in Florida were charged a "Short Rate Cancel Fee" over a seven-year period is sufficient to meet that hurdle.[3] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).  Even if was not sufficient, however, Plaintiff has submitted into the record PGAC's Responses to Plaintiffs' Third Request for Admissions, wherein PGAC admits that from 2017 to 2021, more than 100 of PGAC's customers in Florida were charged a "Short Rate Cancel Fee." *See* [DE 95-1] at 1.[4]

PGAC's reliance on *Vega* is likewise unavailing as that case concerned a district court's improper reliance on vague testimony concerning the number of retail associates employed by a

---

[3] As Plaintiffs point out, even assuming there were only 100 customers charged a "Short Rate Cancel Fee" from 2014 to 2021, a reasonable estimate reveals that were at least well over forty class members from 2016 to 2021, which is sufficient to raise the presumption that joinder is impracticable. *See* [DE 90] at 9 (estimating that there were at least fourteen insureds each year between 2014 and 2021 who were charged a "Short Rate Cancel Fee," which equates to at least 72 class members). In any case, "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

[4] Plaintiffs' request to submit PGAC's responses to be considered in Plaintiffs' Motion for Class Certification were unopposed by Defendant. *See* [DE 93].

defendant nationwide, even though the class was limited to Florida. *Vega*, 564 F. 3d at 1267 ("In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation."). Unlike *Vega*, Plaintiff cites to evidence regarding those who would compromise membership of the Florida class.

Numerosity has been satisfied.

## C. Commonality

The next requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268 (internal quotations and citation omitted). Rather, "[c]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The resolution of the common issue must be achievable on a class-wide basis. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Put another way, what matters to class certification is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *See id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Plaintiff argues that commonality is met here as PGAC has utilized a standard uniform insurance contract with identical Refund of Premium language in Florida during the applicable class period; therefore, whether PGAC properly calculated its Refund of Premium in accordance with the terms of the policy will be subject to the same answer for every Florida insured. In response, Defendant contends that Plaintiffs have not satisfied the commonality element because

though all Plaintiffs are subject to the same Refund of Premium provision, not all Plaintiffs have a common contract.

The Court finds that Plaintiff has met the commonality requirement of Rule 23(a). Plaintiffs present evidence that members of the class were issued form policies that share the relevant policy language. Common questions of law and fact regarding the proper legal interpretation of this language exist, namely, whether the policy language requires PGAC to calculate the "Short Rate Cancellation Premium" against only that amount previously paid to PGAC and still held by PGAC, and whether PGAC breached the policy by following its uniform methodology for calculating the short rate cancellation fee by assessing at 10% penalty against the entire remaining premium amount. "Ultimately, the burden on the plaintiff to show commonality is a low one and, unlike the predominance requirement of Rule 23(b)(3), will often be satisfied in cases of form contracts such as insurance policies, so long as the policy documents are uniform or largely the same throughout the case." *Mills v. Foremost Ins. Co*., 269 F.R.D. 663, 671 (M.D. Fla. 2010). The Court finds that whether PGAC violated the policy is a common question of contract and statutory interpretation central to Defendant's liability, and resolution of this issue will affect all members of the putative class.

The Court rejects Defendant's argument that class certification is inappropriate because "not all Plaintiffs have a common contract." First, the suggestion that the insurance application, not the policy, is the contract is a distinction without a difference. It is the insurance application and the insurance policy which *together* constitute the contract.  *See* § 627.419(1), Fla. Stat. ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."); *Mathews v. Ranger Ins. Co.*, 281 So. 2d 345, 348

(Fla. 1973) (construing section 627.419(1) to mean: "[t]he application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance"). Second, though there may be differences with regards to information set forth on a policyholder's applications, it is not particular premiums, vehicles, or coverages that forms the basis of Plaintiffs' claims, but whether the relevant policy provision requires PGAC to employ a different system for calculating premium refunds when insured's cancel.

Finally, Plaintiff has proffered a uniform methodology to determine the proper amount of a given Plaintiff's premium refund, which methodology can be applied across the entire class.[5]

The Court finds that the commonality requirement has been met.

### D. Typicality

The claims or defenses of the representative class member must also be typical of the claims or defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). "Typicality . . . does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* "Differences in the amount of damages between the class representative and other class members does not affect typicality." *Id.* The class representative's claims "need not be identical" to those of class members; they need only "'arise from the same event or pattern or practice and [be] based on the same legal theory.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).

---

[5] Plaintiffs assert that the methodology involves simple arithmetic, by taking the pro rata amount of unearned premium previously paid by the insured and still held by PGAC at the time of cancellation, and multiplying it by 90% to determine the proper amount that should have been refunded to the insured.

Plaintiffs have satisfied this requirement.  Plaintiffs' claims are typical of claims of other putative class members because they were each insured by PGAC pursuant to automobile insurance policies with identical Refund of Premium language.  Plaintiffs and the putative class members all allegedly suffered the same alleged injury as a result of Defendant's conduct, namely, that PGAC calculated the "Short Rate Cancellation Premiums" in contravention with the terms of the policy.  The injury common to Plaintiffs and the class rely on the same legal and factual theories of liability.

PGAC's arguments regarding the typicality requirement are unpersuasive. PGAC contends that Plaintiffs claims are not typical of those of other class members because Plaintiffs have not suffered any injury as they received the correct premium refund due under the policy. In other words, PGAC argues that Plaintiffs' claims are atypical because PGAC did not breach its contract. But whether PGAC actually breached the insurance contract is not relevant for the purposes of class certification. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* PGAC has failed to articulate how determining the merits of Plaintiffs' breach of contract claim is relevant to the typicality requirement.

Along the same lines, PGAC argues that Plaintiff Pugh's claims are atypical because, unlike other class members, Pugh is actually indebted to PGAC and therefore never received a refund. Defendant's contention that Pugh did not receive a refund and instead has an outstanding balance with PGAC does not render Pugh an atypical representative. Plaintiffs' theory of liability is that all class members were injured by the alleged failure to calculate unearned premium

13

refunds due in accordance with applicable policy language. Under this theory of liability, the question is whether Defendant PGAC breached the policy by failing to calculate unearned premium refunds in accordance with the terms of the policy. Whether the result of such conduct was an improper refund or an improper debt does not preclude a finding of typicality here. PGAC's arguments to the contrary are nothing more than the same arguments raised in its pending motion for summary judgment. *See* [DE 80]. The veracity of those arguments and—most importantly—the merits of Plaintiffs' claims would be more properly addressed when the Court rules on that motion.

Therefore, Plaintiffs satisfy the typicality requirement.

### E.    Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "[T]his requirement applies to both the named plaintiff and counsel," and "the requirement's purpose is to protect the legal rights of absent class members." *London*, 340 F.3d at 1253 (internal quotations omitted). Additionally, this requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (internal quotations omitted).

The Court finds that Plaintiffs and their counsel satisfy this requirement.  There do not appear to be any conflicts of interest between Plaintiff and the putative class.  Further, the Court finds Plaintiff's counsel qualified pursuant to Rule 23(g)(1) to represent the putative class. Plaintiffs' counsel has sufficient experience with class actions and complex litigation. *See* [DEs 82-16, 82-17, 82-18]. Defendant has not offered evidence to negate Plaintiffs' counsel's adequacy and instead only challenges Plaintiffs' adequacy.  Specifically, Defendant argues that Plaintiffs are inadequate class representatives for the same reason their claims are atypical: their

14

inability to prove PGAC breached the insurance contract. For the reasons stated *supra,* this argument is without merit.

PGAC also argues Plaintiff Connor is an inadequate class representative because she was convicted of the felony of Kidnapping in 2001, for which she served 12 years in prison. According to PGAC, "[b]ased on her serving significant time in prison, Connor does not possess the personal characteristics and integrity to fulfill the fiduciary role of class representative." [DE 87] at 8. This argument is wholly without merit. Being convicted of a felony or serving time in prison does not automatically disqualify a class representative. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 328 (S.D. Fla. 1996) ("[T]he Court notes that persons indicted or convicted of crimes may be adequate class representatives."); *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986) (finding that "a felony criminal record is not per se disqualifying as a class representative" and that "[i]ncarcerated felons have long been certified as class plaintiffs in numerous cases"). "'Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record.'" *Randle v. Spectran*, 129 F.R.D. 386, 392 (D. Mass. 1988) (quoting *Haywood*, 109 F.R.D. at 579).

Here, Connor's felony conviction, while serious, is not conclusive as to her ability to adequately represent this class. Defendant does not cite, and the Court cannot find, any authority holding that a felony conviction standing alone renders a class representative inadequate. PGAC fails to point to any evidence that calls into question Connor's credibility in this or related ligation. To the contrary, the Court finds from the evidence that Plaintiffs Connor and Pugh are knowledgeable about the nature of the case, have kept reasonably informed as to the status of the case, have no known conflicts of interest with the absent class members nor individual interests

antagonistic to the interests of the class, and have otherwise dedicated a significant amount of time to this matter. *See* [DE 82-14] at ¶¶ 2–4; [DE 82-15] at ¶¶ 2–4.

Therefore, Plaintiffs and counsel satisfy the adequacy requirement.

## F. Rule 23(b)(3)

In addition to meeting the requirements under Rule 23(a), parties seeking class certification must also satisfy one of the subsections of Rule 23(b). *Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 678 (S.D. Fla. 2009). Here, Plaintiffs assert that certification is appropriate under Rule 23(b)(3). "Class certification under Rule 23(b)(3) is appropriate when (1) 'questions of law or fact common to the members of the class predominate over any questions affecting only individuals members,' and when (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The Court will consider each requirement in turn.

### 1. Predominance

Under this factor, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). "Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof." *Rosen*, 270 F.R.D. at 681 (citing *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc*., 211 F.3d 1228, 1234 (11th Cir. 2000). Moreover, "the presence of individualized damages issues does not prevent a finding

that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Plaintiffs contend that common issues predominate elements of their breach of contract claim. There are three elements of a breach of contract claim in Florida: (1) the existence of a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Plaintiffs argue that common issues—namely, whether PGAC materially breached its uniform insurance policies by the way it calculates refund of premiums upon an insured's cancellation—predominate.

With regards to damages, Plaintiffs argue that each class members damages can be determined through a common methodology and common evidence. For example, Plaintiffs assert that PGAC maintains detailed computer records regarding insureds who cancel their insurance, which references how much premium was paid and how the insured's unearned premium was handled upon cancellation. Plaintiffs suggest that calculating how much would be properly owed is a matter of simple arithmetic, derived by taking whatever unearned premium amount was paid by the insured and still held by PGAC at the time of cancellation and multiplying it by 90%. According to Plaintiffs, the difference between that number and the amount of the actual refund, if any, paid to insured by PGAC constitutes the insured's damages.

As to Plaintiffs' breach of contract claim, Defendant argues that, to obtain coverage, each putative class member had to fill out an application with PGAC, such as the amount and type of vehicle to be insured, the individuals insured under the policy, and the individualized payment plan (either 6-month or 12-month policies with varying frequencies of payment). Defendants further point out that to determine the proper refund owed to a putative class member, the Court will have to consider: (1) each insured's PGAC application; (2) the duration period elected by

each insured; (3) the payment plan elected by each insured; (4) the number of days left in a policy period at the time of cancelation; (5) each insured's respective declaration page; (6) any renewed declarations pages for the applicable policy period; (7) whether any vehicles or (8) individuals have been added or removed that would have impacted the insured's total premium; (9) the insured's total premium; (10) the total amount of premium paid to date; (11) any installment fees charged; (12) accident claim history; and (13) PGAC's Florida Personal Auto Policy Terms.

The Court finds Defendants' argument ultimately unpersuasive. Common issues of law and fact that are susceptible to common proof predominate over any issues that may necessitate to individualized proof.  Interpretation of uniform material insurance provisions that will determine liability is particularly indicative of predominance. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) ("For purposes of the litigation, the pertinent provisions of Nationwide's policies are substantially uniform and adjudication of the putative class' breach of contract claim would not invoke predomination of individual issues of fact."); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 611 (D. Mont. 2003) ("The most significant aspect of this case is whether Mountain West denied stacking benefits to its insureds, and this question is common to all."). Here, the material terms of class members' policies with PGAC are identical and subject to common proof. Further, Defendant's uniform business practices in calculating the refunds are subject to common proof. As such, the key elements of the existence of a contract and breach in the present case are subject to common proof. Whether insureds may pay different premiums or have different vehicles do not make any material difference for Plaintiffs' theory of liability. This is particularly true here, where Plaintiffs' claims are premised upon identical policies and practices affecting all class members

in a uniform manner. *See Powers v. Hamilton County Public Defender Comm'n,* 501 F.3d 592, 619 (6th Cir.2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

Moreover, "[t]he 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) Neither of the exceptions to the rule apply here, as computing damages will not be "so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable," nor are individual damages accompanied here by "significant individualized questions going to liability." *Id.* (citations omitted).  Plaintiffs have proffered a uniform formula for calculating class members' damages stemming from Defendants' uniform business practices to determine the alleged amount of improper refund.  Based on the arguments of the parties, it does not appear that computing damages using a formula would be so complex and fact-specific that it would pose an intolerable burden on the Court. Further, the common legal and factual issues identified in this case are significantly more substantial than the individualized damages and evidentiary issues emphasized by Defendant.

Defendant's reference to documents and factors the Court may have to consider in assessing the proper refund to each class member is unavailing. First, the affidavit cited by Defendant makes clear that though premium amounts are determined by actuaries who analyze each policyholder's data, the policyholder's pro rata unearned premium is computer generated and based upon a mathematic formula. *See* [DE 80-2]. The individualized determinations regarding premiums do not appear to be relevant to Plaintiffs' claims. Second, if Defendant

19

proves that its uniform procedure for calculating unearned premium refunds is proper under the policy, then Plaintiffs' claims fail, and no individual assessment is required.

Defendant's argument regarding Plaintiffs' alternative theory of unjust enrichment is likewise unavailing. Defendant argues that Plaintiffs' unjust enrichment claim fails the predominance inquiries because such a claim requires individualized inquiries into the individual equities attendant to each class member. In Florida, a claim for unjust enrichment requires: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1284 (S.D. Fla. 2010) *aff'd sub nom. Webber v. Esquire Deposition Servs.*, LLC, 439 F. App'x 849 (11th Cir. 2011) (quoting *Rollins Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (quotation marks omitted)). While the Eleventh Circuit has found that unjust enrichment claims are sometimes inappropriate for class-wide resolution, *see, e.g., Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Court cannot conceive, and Defendant does not suggest, any significant equitable differences between class members here. *See Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010). Rather, all the evidence in this case suggests that Defendant's business practices are the same to all members of the putative class, and therefore any finding of liability would be uniform across the class. *City of Rome, Georgia v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 WL 13229684, at *23 (N.D. Ga. Mar. 21, 2011). As such, Plaintiffs' unjust enrichment claim does not preclude a finding of predominance.

At this point in the litigation, the Court finds that common questions of law and fact will predominate the adjudication of whether Defendant, through its uniform business practice,

breached the policy or alternatively, unlawfully retained a benefit for itself. Therefore, the Court

finds that the predominance factor under Rule 23(b)(3) is satisfied. However, the Court notes that

it retains the ability to reevaluate this determination and later establish sub-classes or decertify

the class as to any of Plaintiffs' theories of liability.

> 2.      *Superiority*

Rule 23(b)(3) requires that

> a class action is superior to other available methods for fairly and
> efficiently adjudicating the controversy. The matters pertinent to
> these findings include: (A) the class members' interests in
> individually controlling the prosecution or defense of separate
> actions; (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members; (C) the
> desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and (D) the likely difficulties in
> managing a class action. Fed. R. Civ. P. 23

This factor is closely linked to the predominance factor "because when common issues

predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle

for adjudicating the plaintiffs' claims." *Nelson*, 270 F.R.D. at 698 (citing *Klay*, 382 F.3d at

1269).

Plaintiffs cite several reasons why a class action is the most desirable vehicle to

adjudicate the claims, including that the an individual's damages are likely to be small and

insufficient for counsel to represent them individually when compared to the cost of litigating a

breach of contract case against a large insurance company, and that the class action is

manageable, as the uniform policy provision in question lies at the heart of this case with

damages to be determined by an analysis of Defendant's data.  The Court finds that class

certification is superior to other methods for adjudicating this controversy.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Motion [DE 82] is **GRANTED**.

2.      The Court hereby certifies a class (the "Class") pursuant to Fed. R. Civ. P. 23(b)(3) consisting of the following:

> All citizens residing in the State of Florida, who, within five (5) years of the filing of this action, were (1) insured under an auto policy sold or issued by Permanent General containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non-Renewal" section as found in Plaintiffs Connor's and Pugh's policies, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by Permanent General and still unearned on the effective date of cancellation.

3.   The Class is subject to decertification or adjustment as appropriate.

4.   Myrtle Pugh and Dorine Connor are hereby certified as representatives of the Class.

5.   Zebersky Payne Shaw Lewenz LLP, Irby Law LLC, and Methvin, Terrell, Yancey, Stephens & Miller, P.C. are hereby certified as Class Counsel pursuant to Rule 23(g)(1).

6.   On or before **April 22, 2022**, the parties shall jointly file for approval by the Court a proposed notice to Class members; alternatively, if the parties cannot agree on a proposed notice, Plaintiffs shall file a proposed notice on or before **April 22, 2022**, and Defendant shall file any objections within three (3) days of the filing of Plaintiffs' proposed notice.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this

8th day of April, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record