UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:20-CV-81979-WPD

DORINE L. CONNOR, and
MYRTLE E. PUGH,
Individually and on behalf
of all others similarly situated,

    Plaintiffs,

v.

PERMANENT GENERAL ASSURANCE
CORP.,

    Defendant.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Permanent General Assurance Corp. ("PGAC" or "Defendant")'s Motion for Summary Judgment ("Defendant's Motion") [DE 80], filed on December 13, 2021, and Plaintiffs' Cross-Motion for Partial Summary Judgment ("Plaintiffs' Response and Cross Motion") [DE 86], filed on January 7, 2022.[1] The Court has carefully considered the Motion [DE 80], Plaintiffs' Response and Cross Motion [DE 86], Defendant's Reply [DE 91], the statements of facts, the exhibits and affidavits filed in the record,

---

[1] On December 13, 2021, the same day Plaintiffs moved for class certification, Defendant filed this motion for summary judgment. *See* [DE 82]. In complying with the Eleventh Circuit's guidance on the issue of whether it should address the motions together, the Court exercised its discretion to consider the motions separately, and addressed the class certification issue first. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("It [is] within the court's discretion to consider the merits of the claims before their amenability to class certification."); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215–16 (11th Cir. 2003) (reversing a district court that mistakenly "thought that its decision granting [a defendant] summary judgment automatically disposed of the class certification issue"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.21 (11th Cir. 2009) ("The district court could have prevented, or at least reduced, this confusion by keeping the class certification determination both conceptually and temporally distinct from its merits ruling on summary judgment.").

1

the oral arguments made at the hearing on April 27, 2022, and is otherwise fully advised in the premises.

## I.     BACKGROUND[2]

This case arises out of PGAC's alleged failure to calculate unearned premium refunds due to be paid upon cancellation in accordance with applicable policy language. The Court first turns to the procedural history of this case.

### A.     Procedural Background

Plaintiff Printa Finley ("Finley") filed a putative class action against PGAC and Nation Motor Club, LLC d/b/a Nation Safe Drivers ("NSD") on October 27, 2020, which she replaced on December 11, 2020 with an Amended Class Action Complaint. *See* [DEs 1, 17]. On January 25, 2021, Finley filed a Second Amended Class Action Complaint, adding Dorine Connor and Myrtle Pugh as plaintiffs. *See* [DE 37]. Finley voluntarily dismissed her claims against PGAC and NSD on March 4, 2021. *See* [DE 47]. As Finley was the only Plaintiff with a claim against NSD, NSD was dismissed from the action. *See* [DE 50]. On July 9, 2021, Plaintiffs Connor and Pugh filed a Third Amended Compliant ("TAC"), the operative complaint, to add Matthew K. Lancaster ("Lancaster") to represent a nationwide class and California subclass. *See* [DE 67]. The Third Amended Complaint alleged four counts: Count I for breach of contract; Count II for restitution/unjust enrichment of unlawful penalty (on behalf of the Florida subclass); Count III for restitution/unjust enrichment of unlawful penalty (on behalf of the California subclass); and Count IV for unlawful, unfair and fraudulent business practices (on behalf of the California

---

[2] Defendant's statement of material facts, Plaintiffs' response thereto, and Defendant's response to Plaintiff's additional facts includes various citations to specific portions of the record. Defendant's statement of facts [DE 81] is cited as ("DSMF"), Plaintiffs' response [DE 89] is cited as ("PSMF"), and Defendant's response to Plaintiffs' additional facts [DE 92] is cited as ("DRSMF"). Any citations herein to the statement of facts and responses should be construed as incorporating those citations to the record.

subclass). *Id.* On November 18, 2021, the Court dismissed all claims brought by Lancaster for lack of personal jurisdiction over Defendant. *See* [DE 78]. Accordingly, Plaintiffs Connor and Pugh are proceeding solely on Count I for breach of contract and Count II for unjust enrichment.

The Court recently certified the matter for class treatment. *See* [DE 96]. Now, PGAC moves for summary judgment on all of Plaintiffs' claims. In their response to Defendant's Motion, Plaintiffs also assert a Cross-Motion for Partial Summary Judgment.[3] *See* [DE 86] at 2 n.1. The matter is now ripe for review.

### B. Factual Background

PGAC is a provider of automobile insurance that markets, sells, and underwrites non-standard automobile insurance throughout the United States. DSMF ¶ 1; PSMF ¶¶ 1, 48; DRSMF ¶ 48. Plaintiffs Dorine L. Connor ("Connor") and Myrtle E. Pugh ("Pugh") are Florida residents who possessed automobile insurance coverage from PGAC under insurance policies (the "Policy") with materially similar provisions. DSMF ¶ 2; PSMF ¶ 2. The relevant portion of the Policy, Provision G, provides:

> **CANCELLATION AND NON-RENEWAL.**
> . . . .
>
> **G. Refund of Premium.**
>
> 1. Upon cancellation "you" may be entitled to a refund of unearned premium. Making a premium refund is not a condition of cancellation.
>
> 2. If the cancellation is at "your" request, "we" will refund 90% of the pro rata unearned premium.
>
> 3. If the policy is canceled at "our" request, "we" will make a pro rata refund of any unearned premium.

---

3 The Court notes that Defendant's reply does not object to the procedure of Plaintiffs asserting their cross motion in response to Defendant's motion rather than as a separate motion.

DSMF ¶ 6; PSMF ¶ 6.

The parties' dispute centers around PGAC's practice of charging and retaining for itself what it internally calls a "Short Rate Cancellation Premium" upon cancellation by an insured. PSMF ¶ 58; DRSMF ¶ 58. When an insured cancels coverage, the refund of 90% of the pro rata unearned premium is computer generated by "I Series," a Policy Administration system that calculates pro-rata factors. DSMF ¶¶ 20–21; PSMF ¶¶ 20–21. Plaintiffs in this matter paid their premiums monthly and elected to cancel their policy prior to the expiration of the applicable policy term. PSMF ¶¶ 54, 57; DRSMF ¶¶ 54, 57. To demonstrate the position of the parties, the Court briefly summarizes the facts as to each named Plaintiff.

Plaintiff Connor applied for insurance coverage with PGAC on September 24, 2017. DSMF ¶ 4; PSMF ¶ 4. Connor renewed her policy with PGAC for the 2019–2020 year, with a policy period from September 24, 2019 to September 24, 2020. DSMF ¶¶ 13; PSMF ¶¶ 13. On June 2, 2020, Connor cancelled her policy with PGAC. DSMF ¶ 17; PSMF ¶ 17. Because she obtained new coverage with Progressive on May 26, 2020, the effective date her cancellation under PGAC's records was May 26, 2020. DSMF ¶¶ 17–18; PSMF ¶¶ 17–18. In evaluating Connor's refund upon cancellation, PGAC divided the 121 days left in Connor's term, by the total amount of days in the full term, 366,[4] to determine Connor's pro rata factor of .330601. DSMF ¶¶ 22–23. PGAC multiplied that pro rata factor by .9 (or 90%) to determine 90% of the pro rata factor, .297541. DSMF ¶ 24. PGAC then multiplied .297541 by Connor's full term premium amount of $2,681.00 to determine that Connor was entitled to a credit of $797.71, and thereafter applied a credit of $799.00 to Connor's account. DSMF ¶¶ 19, 25–26; PSMF ¶¶ 19, 26. As Connor owed $646.14 for the remaining months of her policy, PGAC deducted that

---

[4] The term of Connor's policy fell within a leap year. DSMF ¶ 14.

4

amount from the $799.00 credit, and issued Connor a refund check for $152.86. DSMF ¶¶ 27–29; PSMF ¶¶ 27–29.

Plaintiff Pugh applied for insurance coverage with PGAC on July 13, 2017. DSMF ¶ 4; PSMF ¶ 4. Pugh renewed her policy with PGAC for the 2020–2021 year, with a policy period from July 22, 2020 to July 22, 2021. DSMF ¶ 31; PSMF ¶ 31. On August 19, 2020, Pugh cancelled her policy with PGAC, which is the same effective date of her cancellation under PGAC's records. DSMF ¶ 34; PSMF ¶ 34. In evaluating Pugh's refund upon cancellation, PGAC divided the 337 days left in Pugh's term by the total amount of days in the full term, 365, to determine Pugh's pro rata factor of .923288. DSMF ¶¶ 35–36. PGAC multiplied that pro rata factor by .9 (or 90%) to determine 90% of the pro rata factor, .830959. DSMF ¶ 37. PGAC then multiplied .830959 by Pugh's full term premium amount of $6,718.00 to determine that Pugh was entitled to a credit of $5,582.00, and thereafter applied a credit of $5,582.00 to Pugh's account. DSMF ¶¶ 33, 37–38; PSMF ¶¶ 33, 38. As Pugh owed $6,178.39 for the remaining months of her policy, PGAC deducted that amount from the $5,582.00 credit, and issued Pugh a collection letter for the remaining balance of $596.39. DSMF ¶¶ 39–41; PSMF ¶¶ 39–41.

According to Plaintiffs, PGAC calculated premium refunds due in a manner inconsistent with Provision G of the Policy by improperly deducting a "Short-Rate Cancellation Premium" based upon 10% of premiums never paid by the insured and never held by PGAC. For instance, Plaintiff Connor paid her monthly premium of $259 on May 24, 2020 and the effective date of her cancellation was May 26, 2020. PSMF ¶ 64; DRSMF ¶ 64. Therefore, Connor contends that there were 29 days left of unearned premium paid by Connor and received by PGAC. PSMF ¶ 65. According to Connor, the pro rata amount of unearned premium previously paid by Connor

5

and still held by PGAC at the time of her cancellation was about $240, which amount accounted for PGAC's up-front administrative fees. PSMF ¶¶ 43, 68. Ninety percent of this pro rata unearned premium is $216, which is the amount Connor alleges she should have been refunded by PGAC. PSMF ¶ 69.

Likewise, Plaintiff Pugh paid her down payment of $594.61 on July 22, 2020 to renew her policy, but cancelled 28 days later on August 19, 2020. PSMF ¶ 66; DRSMF ¶ 66. Therefore, according to Pugh, there were three days of unearned premium paid by Pugh and received by PGAC. PSMF ¶ 67. According to Pugh, the pro rata amount of unearned premium previously paid by Pugh and still held by PGAC at the time of her cancellation was about $24.26, which amount accounted for PGAC's up-front administrative fees. PSMF ¶¶ 43, 68. Ninety percent of this pro rata unearned premium is $21.83, which is the amount Pugh alleges she should have been refunded by PGAC. PSMF ¶ 69.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this

burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

"When the only question a court must decide is a question of law, summary judgment may be granted." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir.2011). "Contract and statutory interpretation are both questions of law appropriately decided on summary judgment." *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1288 (M.D. Fla. 2015).

## III. DISCUSSION

According to Plaintiffs, PGAC improperly deducted a "Short-Rate Cancellation Premium" based upon 10% of premiums never paid by the insured, never held by PGAC, and not due to be paid back to the insured, in violation of the of Provision G of the Policy. Alternatively, Plaintiff asserts that PGAC's uniform practice of assessing a "Short-Rate Cancellation Premium" upon an insured's cancellation constitutes unjust enrichment. Defendant now seeks summary judgment on both of Plaintiffs' claims, and Plaintiffs seek partial summary judgment on their breach of contract claim. The Court discusses each claim, in turn.

### A. Breach of Contract

"A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages." *See Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *4 (M.D. Fla. May 29, 2019) (citing *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)). When interpreting insurances contracts, under Florida law, the contract is construed according to its "plain meaning." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1304 (11th Cir. 2008). Ambiguities in insurance contracts should be construed liberally in favor of the insured and against the drafter. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla.

2005); *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993). "[A]mbiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations . . . ." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001). The ambiguity must be genuine, and the lack of a definition for an operative term "does not, by itself, create an ambiguity." *Botee v. S. Fid. Ins. Co.*, 162 So.3d 183, 186 (Fla. 5th DCA 2015). "When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Id.* "Additionally, in interpreting an insurance contract, a court should consider its terms as they would be understood by a reasonable layperson, not an expert." *Colony Ins. Co. v. Nicholson*, No. 10-60042-CIV, 2010 WL 3522138, at *3 (S.D. Fla. Sept. 8, 2010)

As discussed below, the Court finds Plaintiffs' interpretation of the Policy is, at minimum, an ambiguity that must be construed against PGAC. Accordingly, the Court finds that PGAC has breached the Policy by assessing a "Short-Cancellation Premium" based upon 10% of those amounts never paid by the insured.

Once again, the relevant section of the Policy states:

**CANCELLATION AND NON-RENEWAL.**
. . . .

**G. Refund of Premium.**

1. Upon cancellation "you" may be entitled to a refund of unearned premium. Making a premium refund is not a condition of cancellation.

2. *If the cancellation is at "your" request, "we" will refund 90% of the pro rata unearned premium.*

9

> 3. If the policy is canceled at "our" request, "we" will make a pro rata refund of any unearned premium.

DSMF ¶ 6; PSMF ¶ 6 (emphasis added).

The central dispute here turns on the language of the Policy. Importantly for the Court's analysis, the Policy does not define any of the terms in Provision G besides "you/your" and "we/our." PSMF ¶ 63; DRSMF ¶ 63. The Policy does not reference a "Short Rate Cancellation Premium," nor do they reference a "cancellation fee." PSMF ¶ 62; DRSMF ¶ 62. Though PGAC provides a "Florida Disclosure of Fees Notice" document to insureds at policy inception, that document does not reference any cancellation policy or fee. PSMF ¶ 61; DRSMF ¶ 61. There are no provisions in the Policy or the Disclosure of Fees Notice discussing the effect of paying in installments other than a one-time $10 "Underwriting Fee" if an insured elects to pay a policy premium in installments. PSMF ¶ 55; DRSMF ¶ 55. Furthermore, nothing in the Policy explains how PGAC calculates its "Short Rate Cancellation Premium."

PGAC asserts that it properly refunded 90% of each Plaintiff's pro rata unearned premium pursuant to the Policy's unambiguous terms, Florida law, and accepted practices and understandings with respect to such language in the insurance business. First, PGAC argues that the premium is the full-term premium amount identified in each insured's renewal declaration pages. DRSMF ¶ 63. PGAC further argues that the "unearned premium" is "that portion of the written premium applicable to the unexpired or unused part of the period for which the premium has been calculated," in this case, the number of days remaining in the policy period as of the date of cancellation. [DE 80] at 5–6 (citing Definition of "Pro Rata Cancellation," International Risk Management Institute, Inc. (IRMI), available at https://www.irmi.com/term/insurance-

definitions/pro-rata-cancellation (last visited April 14, 2022)). Finally, PGAC contends that pro rata here means proportionate to the whole premium amount. The Court disagrees.

Though it is true that each Plaintiff's renewal declaration page references a "Total Full Term Premium," notably absent from the Policy is any definition for "unearned premium." Because the absence of a definition does not automatically render the term ambiguous, the Court finds it necessary to turn to outside sources. The term unearned premium is generally understood in the insurance business as that "amount of premium for which payment has been made by the policyholder but coverage has not yet been provided." *See* [DE 86] at 11–12 (citing Glossary of Insurance Terms, NAIC, available at https://content.naic.org/consumer_gloassary#U (last visited April 14, 2022)). Sometimes the unearned premium is defined more broadly as "that portion of the policy premium that has not yet been 'earned' by the company because the policy still has some time to run before expiration." *See* Definition of "Unearned Premium," IRMI, available at https://www.irmi.com/term/insurance-definitions/unearned-premium (last visited April 19, 2022). Recognizing that "insurance premiums are often paid in advance," insurers generally "'earn' the premium . . . throughout the policy term," with any paid yet unearned portion of the premium being kept in the "unearned premium reserve." *See* Definition of "Earned Premium," IRMI, available at https://www.irmi.com/term/insurance-definitions/earned-premium (last visited April 19, 2022)). These definitions, however, fail to define a method for refunding unearned premiums upon cancellation, particularly where premium amounts are paid in installments.

Adding to the lack of clarity is the term "pro rata." By definition "pro rata" simply means "proportionately." Pro Rata, *Black's Law Dictionary* (11th ed. 2019); *see also* Definition of "Pro Rata," IRMI, available at https://www.irmi.com/term/insurance-definitions/pro-rata (last visited

11

(April 20, 2022)). There are typically two ways to calculate refunds of unearned premiums upon cancellation—the pro rata method and the short rate method. Under the pro rata method, insureds are credited "the full proportion of premium for the unexpired term of the policy or bond, without penalty for interim cancellation." Definition of "Pro Rata Cancellation," IRMI, available at https://www.irmi.com/term/insurance-definitions/pro-rata-cancellation (last visited April 20, 2022). As one court described it: "[I]f the annual policy costs $365, the insurer earns one dollar of the premium each day, and the unearned premium decreases in a corresponding amount. If the policy is cancelled after one month $31 is earned (assuming a 31 day month) and the balance is unearned." *Savage & Assocs., P.C. v. A.I. Credit Corp. (In re Teligent, Inc.)*, 337 B.R. 39, 45-46 (Bankr. S.D.N.Y. 2005). Under the short rate method, however, "the insurer is entitled to retain a greater percentage of unearned premium" than with pro rata cancellation. Definition of "Short-Rate Cancellation," IRMI, available at https://www.irmi.com/term/insurance-definitions/short-rate-cancellation (last visited April 20, 2022). This amount is typically calculated with "short-rate table" or by "multiplying the pro rata cancellation factor by a certain percentage increase—for example, 10 percent." *Id.* Though it is clear from the affidavit of Alan Shell that PGAC engages in a short rate cancellation protocol, once again, the Policy itself is devoid of any explanation of such protocol, and the language of Provision G does not make clear that a penalty is being assessed against amounts unpaid.

 Further, pursuant to Florida Statute Section 627.7283(4):

> (4) If the insured cancels, the insurer may retain up to 10 percent of the unearned premium and must refund at least 90 percent of the unearned premium. If the insurer cancels, the insurer must refund 100 percent of the unearned premium. Cancellation is without prejudice to any claim originating prior to the effective date of the cancellation. For purposes of this section, **unearned premiums must be computed on a pro rata basis**.

Fla. Stat. § 627.7283(4) (emphasis added). PGAC contends that this provision supports its interpretation, but the Court disagrees.[5] The fact that the statute requires unearned premiums to be calculated on a pro rata basis does not alter the fact that the term unearned premium as used in the Policy can be reasonably understood to include only the amount of premium for which payment has been made. Nor does it change the fact that one can reasonably understand a "refund" to apply only to amounts paid.[6] *See, e.g., Chonko v. Comm'r of Soc. Sec. Admin.*, 624 F. Supp. 2d 357, 364 (D.N.J. 2008) ("One cannot "refund" money to a person unless one has already received money from that person.").

Additionally, just as with interpreting other contracts, when interpreting insurance contracts the Court is "constrained by law to construe a contract as a whole so as to give effect . . . to all provisions of the agreement if it can be reasonably done." *McArthur v. A.A. Green & Co. of Fla., Inc.*, 637 So. 2d 311, 312 (Fla. 3d DCA 1994) (citation omitted). "If one interpretation, viewed with the other provisions of the contract and its general object and scope, would lead to an absurd conclusion, that interpretation must be abandoned[.]" *Travelers Indem. Co. v. Milgen Dev., Inc.*, 297 So. 2d 845, 847 (Fla. 3d DCA), *cause dismissed,* 303 So. 2d 334 (Fla. 1974); *see also Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998) ("Suffice it to say that insurance policies will not be construed to reach an absurd result."). If, as Defendants argue, the "unearned premium" is that portion of the written premium applicable to the unused part of the period for which the period has been calculated and nothing more, then the portion of Provision G governing an insurer's cancellation would create an absurd

---

5 Indeed, Defendant argued at the April 27, 2022, hearing that PGAC tracks the language of the statute.
6 Notably, the Policy states that an insured "may be entitled to a refund of unearned premium" upon cancellation but does not state that an insured may owe a balance, as in Plaintiff Pugh.

13

result at best. Adopting PGAC's interpretation would mean that an insured would be entitled to a "pro rata refund" of any unused part of the period upon the insurer's cancellation, regardless of whether any amounts were paid by the insured and retained by the insurer. The Court doubts that Defendant would agree to such a reading as it applies to the insurer's cancellation. A proper, more reasonable interpretation of "unearned premium" avoids such an absurd result by construing it to mean that previously paid by the insured to PGAC.

Thus, although the absence of a definition does not automatically render a term or phrase ambiguous, in this case the use of the terms "refund" along with "pro rata unearned premium," combined with the fact that PGAC allows insureds to pay in installments, creates an ambiguity regarding whether yet unpaid premium amounts are included or excluded. Accordingly, because there are multiple reasonable interpretations regarding whether unpaid premium amounts are included in PGAC's refund of "90% of the pro rata unearned premium," Provision G is ambiguous and must be construed in favor of the insured.

Regarding damages, the third and final element of a breach of contract claim, Defendant advances two primary arguments as to why Plaintiffs fail to satisfy this element. First, Defendant asserts that Pugh was not damaged because she owes PGAC $500.00. This argument is without merit. As noted by the Court, *supra,* nothing in the Policy permits PGAC to assess a 10% charge against the remaining premium amount never paid by Pugh and never retained by PGAC. The damage to Plaintiff Pugh is the amount that is owed to her under the Policy and which was not refunded by Defendant. Of course, this would mean that Plaintiff Pugh would not have an outstanding balance with PGAC.

Second, Defendant contends that Plaintiffs have failed to offer substantial proof that they suffered damages. According to Plaintiff Connor, the pro rata amount of unearned premium previously paid by Connor and still held by PGAC at the time of her cancellation was about $240 PSMF ¶¶ 43, 68. According to Plaintiff Pugh, the pro rata amount of unearned premium previously paid by Pugh and still held by PGAC at the time of her cancellation was about $24.26. PSMF ¶ 68. Plaintiffs base their damages amounts on 90% of each of these amounts. *See* PSMF ¶ 69. Neither Plaintiff, however, precisely explains how they calculated the pro rata amount of unearned premium refund previously paid by each Plaintiff and still held by PGAC at the time of her cancellation (i.e., $240 and $24.26). Though it appears this amount was derived by some calculation that considered both the number of days of unearned premium paid by each Plaintiff and received by PGAC, and PGAC's up-front administrative fees, *see* PSMF ¶¶ 43, 65, 67, 81, the Court cannot accept Plaintiffs' conclusory damages amount without first determining whether the basis for such calculation lines up with their theory of liability. To put it simply, Plaintiffs must explain how they calculated the amount of premium paid but still unearned to Defendant and this Court before the Court can award such damages on summary judgment. Therefore, while Plaintiffs' Cross-Motion for Partial Summary Judgment is granted as to Plaintiffs' theory of liability, it must be denied on the determination of damages. This question remains to be resolved a trial.

**B.  Unjust Enrichment**

Count II sets forth an alternative theory for restitution/unjust enrichment of unlawful penalty. PGAC asserts two grounds for dismissal of Count II.

First, PGAC asserts that an equitable remedy like unjust enrichment cannot be awarded because an express contract exists between the parties. Though the Court generally agrees that a claim for unjust enrichment will not lie where an express contract exists concerning the same subject matter, *see, e.g.*, *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 4th DCA 2008), insofar as it has yet to be determined whether damages may be properly awarded under the insurance contract, PGAC is not entitled to summary judgment on Plaintiffs' unjust enrichment claim.[7]

Second, PGAC contends that Plaintiffs failed to comply with section 624.155(1)(a)(6), Florida Statutes, which provides that any person may bring a civil action against an insurer when they are damaged by a violation of certain enumerated statutes, including section 627.7283, provided that person provides 60 days' written notice of the violation. Fla. Stat. § 624.155(3)(a). PGAC's argument is misplaced.

"Section 624.155 creates a cause of action against the insurer for the violation of certain enumerated statutes." *Stinson v. United Auto. Ins. Co.*, 734 So. 2d 505, 507 (Fla. 3d DCA 1999). It does not, however, "preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state." Fla Stat. § 624.155(7). Here, Plaintiffs assert a common law claim for breach of contract[8] and equitable claim in the alternative for unjust enrichment, neither of which appear to be preempted by the statutory rights created by section 624.155(1)(a). *See Stinson*, 734 So. 2d at 507 (reversing a trial court's dismissal of a

---

[7] The Court may require Plaintiffs to elect a remedy at the close of Plaintiffs' case-in-chief. *See Bule v. Garda CL Southeast, Inc.,* 2014 WL 3501546, at *2 (S.D. Fla. July 14, 2014) ("[U]njust enrichment is only available when there is no adequate remedy at law.").

[8] Notably, PGAC only argued in its briefing that failure to provide notice barred Plaintiffs' unjust enrichment claim. At the hearing, however, PGAC attempted to argue that failure to provide such notice barred both of Plaintiffs' claims.

breach of contract claim premised upon section 624.155's notice requirement).[9] As such, the Court finds no basis for granting Defendant summary judgment on this ground.

### IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant PGAC's Motion for Summary Judgment [DE 80] is **DENIED**; and

2. Plaintiffs' Cross-Motion for Partial Summary Judgment [DE 86] is **GRANTED IN PART** as to Plaintiffs' theory of liability but **DENIED IN PART** as to the determination of damages.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of April, 2022.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

---

9 On April 27, 2022, Plaintiffs submitted a notice of supplemental authority that raises arguments that were neither raised in Plaintiffs' response nor at the hearing in this matter. *See* [DE 111]. "[A] notice of supplemental authority that raises an argument . . . is in fact an attempt at a sur-response, which is not permitted in the absence of court order." *United Broadcasting Corp. v. Miami Tele-Communications*, 140 F.R.D. 12, 13 (S.D. Fla. 1991). Accordingly, the Court will not consider any argument or commentary contained in the notice.