IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20-cv-81979-WPD – Dimitrouleas

**DORINE L. CONNOR, and MYRTLE
E. PUGH,** Individually and on behalf of all
other similarly situated,

    **Plaintiffs,**

v.

**PERMANENT GENERAL
ASSURANCE CORP.,**

    **Defendant.**

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiffs Dorine Connor and Myrtle Pugh (together "Plaintiffs"), individually and on behalf of the certified class, respectfully request that the Court preliminarily approve the proposed class action settlement. Defendant Permanent General Assurance Corporation ("PGAC") does not oppose this motion.

**I.    CONCISE STATEMENT OF THE RELIEF SOUGHT**

Plaintiffs file this motion requesting that the Court preliminarily approve a settlement of a class action previously certified by this Court. The "Settlement Class" is defined as:

> All citizens residing in the State of Florida, who, during the Class Period, were (1) insured under an Automobile Insurance Policy sold or issued by PGAC containing the same or similar "Refund of Premium" provision under the policy's "Cancellation and Non-Renewal" section as found in Plaintiffs Connor's and Pugh's policies, and who (2) had their policies cancelled at the insured's request, and who (3) had paid a premium that was held by PGAC and still unearned on the effective date of cancellation.

This Court previously granted Plaintiffs' Motion for Class Certification and certified a class of Florida policyholders defined substantially identically as the proposed Settlement Class. *See* Doc. 96 (Order Granting Plaintiffs' Motion for Class Certification).[1]

Plaintiffs respectfully request that the Court preliminarily certify the proposed Settlement Class and enter an Order of preliminary approval of the proposed Settlement Agreement by entry of the Proposed Order. The Settlement Agreement is attached as Exhibit A to this Motion, to which the proposed preliminary approval Order is attached as Exhibit 1. The Proposed Order approves the form of notice to be given to the Settlement Class, establishes a schedule and process for submitting objections or requesting exclusion from the Settlement Class, and schedules a fairness hearing to be held by the Court. The parties will request final approval of the Settlement in advance of the fairness hearing.

## II. STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after almost two (2) years of hard-fought litigation and following a full-day mediation with an experienced and respected mediator, Benjamin Newman. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The Settlement Agreement provides payment of the full Short Rate Cancellation refund amount alleged to be owed, plus an additional five percent (5%) for interest, to members of the Settlement Class who submit a valid claim. This Court previously granted partial summary

---

[1] The slight difference in the phrasing relates to the clarification of the relevant period as determined by Magistrate Judge Matthewman. (*See* Doc. 117).

2

judgment in favor of Plaintiffs and the certified class, but the issue of damages was undetermined at the time and left to be decided at trial. Doc. 112 (Order on Cross-Motions for Summary Judgment). As set forth below in greater detail, the Settlement Agreement provides Plaintiffs and the members of the Settlement Class greater than one hundred percent (100%) of the relief requested by Plaintiffs in their operative Complaint and includes significant prospective relief benefitting Florida PGAC insureds.

### III. MEMORANDUM OF LEGAL AUTHORITY

#### A. Background.

This case involves allegations that PGAC breached its insurance policies ("Policy") issued to Plaintiffs and similarly-situated Florida insureds by failing to properly calculate Short Rate Cancellation premium refunds to customers who voluntarily cancelled their insurance policies. Exhibit B, Declaration of R. Brent Irby ("Irby Decl.") at ¶ 1.

#### B. Litigation and Discovery History.

This class action has been contested at every stage. Extensive motion practice included multiple motions to dismiss, competing motions for summary judgment, a motion to compel, and a motion for class certification. The parties took depositions, including class representatives and a corporate representative. Plaintiffs reviewed over 1,500 pages of documents produced by Defendant and over 8.3 million data inputs. The parties served and responded to several rounds of discovery. Class notice has been completed relating to class members. Irby Decl. at ¶ 5.

#### C. The Proposed Settlement.

As more fully described in the Settlement Agreement, PGAC agrees: (1) to pay to each Plaintiff and member of the Settlement Class who submit a timely claim the difference between (a) the full unearned premium and (b) the 90% unearned pro rata premium that was previously

credited to the policy at the time of cancellation, plus 5% of the unreimbursed difference as agreed-to interest; and (2) subject to regulatory approval, to modify its internal procedures regarding the calculation of unearned premium refunds after the insured voluntarily cancels the Automobile Insurance Policy under the implicated Florida policy forms in a manner consistent with this Settlement (except that interest shall not be included), and this change in practices for the processing of premium refunds shall be implemented to be effective retroactive starting on April 12, 2022 unless and until (a) there are relevant change(s) in the statutes or regulations applicable to the issue, (b) any Florida court of appellate jurisdiction issues a decision addressing the issue, or (c) PGAC amends or revises the terms of its Florida automobile insurance policies with regard to the issue after preliminary approval of this Proposed Settlement. (Settlement Agreement, V(2); XII).

        **1.**        **Approximate Monetary Value of the Settlement and Greater Than 100% Recovery.**

Plaintiffs calculate that the potential monetary value of all claims under the terms of the Settlement Agreement for refunds of short-rate cancellation premiums and prejudgment interest is approximately $6 million, which includes: (1) approximately $2.835 million in cash available for claimants; (2) $2.25 million in prospective relief from PGAC's change in practice over a five-year period; and (3) $950,000 in attorneys' fees and costs if approved by the Court. Ex. B ("Irby Decl.") at ¶¶ 18 and 19.[2] According to Plaintiffs' calculations, the average value per claim is over $100. *Id.*

---

[2] These are solely Plaintiffs' estimates and projections of valuation. PGAC has not made or adopted any valuation estimates or projections as to what may be considered prospective relief. Plaintiffs' valuation estimates do not include the cost of Notice and Administration of the Settlement which PGAC has agreed to pay in addition to the significant monetary and injunctive relief.

### 2.     Final Resolution of Case.

This settlement provides final resolution and greater than 100% of the relief requested in the respective Complaint without the risk of any potential adverse result.

### 3.     The Settlement Provides Full Recovery to Class Members.

The settlement provides a complete recovery to Settlement Class Members of the damages alleged in the operative Complaint. All class members who submit a timely, complete, and valid claim will receive 100% of the outstanding portion of their refund plus an additional 5% in interest on their claim to the extent that net amounts are owed by PGAC to the claimant.[3] Settlement Agreement at V(2).

### 4.     The Settlement Provides Valuable Prospective Relief.

The settlement requires that PGAC change its business practices in Florida and modify its internal procedures regarding the calculation of unearned premium refunds after the insured voluntarily cancels the Automobile Insurance Policy under the implicated Florida policy forms in a manner consistent with this Settlement (except that interest shall not be included), and this change in practices for the processing of premium refunds shall be implemented to be effective retroactive starting on April 12, 2022. As noted above, this would be subject to any changes that may be warranted in light of changes in applicable statutes or regulations, appellate court decisions, or amendments to PGAC's Florida automobile insurance policies. The value of this relief over a five-year period is reasonably estimated by Plaintiffs to be $2.25 million. Irby Decl.

---

[3] Five percent (5%) exceeds the current judgment interest rate set by the Chief Financial Officer of the Florida Department of Financial Services. *See* https://www.myfloridacfo.com/division/aa/local-governments/judgement-interest-rates

at ¶ 19.  The value of this prospective relief over a one-year period is reasonably estimated by Plaintiffs to be $450,000.  *Id*.[4]

### 5. The Settlement Provides a Narrow Release.

The Settlement Agreement provides a release of claims limited only to the specific claims at issue in this lawsuit including any claims arising out of or related to such claims, as more fully set forth in the Agreement.  Settlement Agreement at XII.

### 6. The Settlement Provides for Robust Notice and Simple and Easy Claims Procedure.

The Settlement provides a robust and substantive Notice plan.  The Settlement Administrator will initiate two separate direct mail notices during the notice period.  The initial notice by mail will include a simple, easy-to-understand, detachable claim form, and it will be followed by a second reminder notice by mail.  In addition to the two mail notices, the Settlement Administrator will initiate two separate email notices, both of which will enable class members to "click through" to the settlement website to make a claim.  Settlement Agreement at III.  Members of the Settlement Class can request exclusion from the Settlement Class or object to the Settlement.  *Id*. at X; *see Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

The Parties also agreed to a streamlined, simple, and straightforward claims process. For the convenience of members of the Settlement Class in submitting claims, Defendant has extracted information from its records to determine the amount of each Settlement Class Members' claim.  *Braynen*, 2015 WL 6872519, at *18; *see* Settlement Agreement at V(2).  No

---

[4] These are solely Plaintiffs' estimates of value.  PGAC has not made or adopted any valuation estimates or projections as to any prospective relief.

additional documentation is required other than each Settlement Class Member must: (i) affirm Settlement Class membership; (ii) affirm his or her identity; and (iii) sign the Claim Form attesting to the accuracy of the information contained in the submitted Claim Form to the best of the Settlement Class Member's knowledge. Settlement Agreement at VI(4). The claim forms need only be signed and placed in the mail. Members of the Settlement Class can also access an electronic claim form on the website by providing a unique claim ID (which is provided in all mailed and email notices). This will allow members of the Settlement Class to electronically submit their claims with relative ease. The claims process requires only the submission of a simple claim form for the Settlement Class member to receive payment of an easily calculated amount from PGAC with whom members of the Settlement Class are familiar and will quickly recognize. *See Wilson v. Everbank*, 2016 WL 457011, at *9 (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").

This type of settlement structure is regularly approved by courts in this Circuit. *See, e.g.*, *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014); *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Bd. of Trs. of Lake Worth Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2012 WL 12906569 (M.D. Fla. July 30, 2012); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015); *Cook, et.al. v. Government Employees Insurance Company, et. al.*,

2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (granting similar claims-made settlement involving unpaid tag and title transfer claims).

### 7. Attorneys' Fees are Reasonable and Within the Eleventh Circuit's Guidelines.

The proposed Settlement Agreement provides that Class Counsel may apply for attorneys' fees not to exceed $950,000, including costs and litigation expenses.[5] *See* Settlement Agreement at ¶ VIII.[6] The attorneys' fees and litigation expenses are 33% of the benefit to the class (not including prospective relief), 29% of the benefit to the class when including only one year of prospective relief, and 19% of the benefit to the class when including five years of prospective relief. *See Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at **10-11 (S.D. Fla. Nov. 20, 2017) (court considers benefit to class as maximum settlement cash fund value and injunctive relief when applying benchmark attorneys' fees percentage); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342–43 (S.D. Fla. 2007) (same); *see also* Irby Decl. at ¶ 25. Importantly, any award of attorneys' fees and costs will not reduce the monetary relief paid to the Settlement Class. Class Counsel negotiated a settlement that requires PGAC to pay its attorneys' fees and costs in addition to the relief provided to the Settlement Class. These percentages fall within the Eleventh Circuit established guidelines for attorneys' fees. Factoring in the value of five years of injunctive relief places the attorneys' fee and expense request below the benchmark for attorneys' fees, which is 20-25% of the benefit to the class. *See Faught v.*

---

[5] As will be detailed in Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Litigation Expenses, Plaintiffs' litigation expenses include, among other costs, cost associated with disseminating class notice of the previously certified class, as well as expert costs in extrapolating, formulating and analyzing class-wide damages for all class members.

[6] The Parties first negotiated the settlement of the merits claims, and then, only after an agreement on the material terms was reached, began discussion of the question of attorneys' fees and costs. Irby Decl. at ¶ 26.

*American Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012) ("[T]his Court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims.") (citations and quotations omitted).[7] Again, any fees and costs approved by the Court will be paid separately by PGAC and will not reduce the amount recoverable by Settlement Class Members, nor impact their recovery in any way. Settlement Agreement at VIII.

### D. Certification of the Settlement Class Is Warranted.

Plaintiffs seek to certify a Settlement Class defined as set forth on page 1, *supra*.[8] Excluded from the Settlement Class are:

(1) any in-house or outside counsel for PGAC and the immediate family members of such persons;

(2) employees of PGAC;

(3) any members of the judiciary assigned to the Action and their staff;

(4) the Parties' counsel in the Action; and

(5) any persons whose claims which have already been fully paid or resolved, whether by direct payment, appraisal, arbitration, settlement, release, judgment, or other means.

Settlement Agreement at I(31).

---

[7] Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit. *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.,* 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003); *David v. American Suzuki Motor Corp.,* 2010 WL 1628362 at *8 n.14 (S.D. Fla. Apr. 15, 2010).

[8] PGAC stipulates to certification for settlement purposes only, and without prejudice to its rights to appeal the previously-certified class in the event the Court does not approve the settlement and without admitting any liability. While PGAC agrees to certification for settlement purposes only, PGAC does not necessarily agree with Plaintiffs' interpretation of Rule 23 or with all of Plaintiffs' specific assertions in this Motion.

The 2018 amendments to Fed. R. Civ. P. 23 clarify that to preliminarily approve a proposed settlement and thus send Notice to Settlement Class Members, courts must be provided information sufficient to find it will likely be able to certify a class in issuing final judgment on the Settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii). However, the advisory committee notes state that in cases seeking preliminary approval after a class is certified through litigation, class counsel need only provide information necessary to explain any changes between the previously-certified class and the proposed settlement class. Fed. R. Civ. P. 23(e)(1) Committee Notes on Amendment – 2018 ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.").

The proposed Settlement Class definition is substantively identical to the class previously certified by this Court (*see* Doc. 96).  Thus, as explained by the advisory committee, the proposed Settlement Class has absolutely no impact on the substantive Rule 23 analysis, and this Court's previous Order (Doc. 96) applies equally to the proposed Settlement Class. Article III standing exists and the Settlement Class is adequately defined and clearly ascertainable. The Rule 23(a) numerosity requirement still exists, the claims asserted are the same, and thus the commonality, typicality, predominance, and superiority requirements are still satisfied.  Irby Decl. at ¶ 23.  Finally, as Class Counsel's declaration shows and as this Court previously held, the class representatives have adequately and zealously represented the class and have no conflicts of interest, *id*.; *see also* Doc. 96 at pp. 14-16 (finding Plaintiffs and Class Counsel are adequate).  Therefore, adequacy is also established.

### E. Preliminary Approval Is Warranted.

Preliminary approval is not binding, and "[a] proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, 2007 U.S. Dist. LEXIS 37863, at *4 (S.D. Fla. 2007) (internal citations omitted). Preliminary approval is required to ensure the proposed settlement appears sufficiently fair and reasonable to justify notifying Class Members and provide an opportunity to be heard prior to a full analysis at final approval. Fed. R. Civ. P. 23(e)(1) (preliminary analysis of settlement is to "determine whether to give notice of the proposal to the class," which is proper if it is demonstrates "the court will likely be able to" approve the settlement). Such requirements are readily satisfied here, as demonstrated above and in the exhibits hereto. *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, *14-15 (S.D. Fla. Aug. 24, 2016) (granting preliminary approval of proposed class action settlement where "the proposed settlement was made after mediation was conducted," "[t]he negotiations appear to have been made in good faith and there do not appear to be any obvious deficiencies," and the settlement amount "appears to be within the range of reasonableness").

As will be set forth in greater detail in the Motion for Final Approval – and as demonstrated by the attached Settlement Agreement – all six factors used by courts to evaluate the fairness and adequacy of a class action settlement strongly support approval here. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) (outlining the six factors). First, there was no fraud or collusion in the settlement. To the contrary, the settlement negotiations were conducted at arm's length, and settlement was only reached following lengthy negotiations with

11

assistance of an experienced and well-respected mediator, Benjamin Newman. Irby Decl. at ¶ 7.

Second, the complexity, expense, and likely duration (given PGAC's intention to file an appeal at the conclusion of this matter, if it had been litigated to a jury verdict) support the settlement. The legal issues presented in both class certification and merits questions in this case were complex, and the parties have undergone and will continue to undergo significant expense if litigation were to continue through appeal and any remand.

Third, the stage of the proceedings and amount of discovery completed support settlement. Plaintiffs propounded and Defendant responded to extensive discovery in this case. The Parties engaged in sophisticated data analysis, and Plaintiffs deposed PGAC's corporate representative concerning the processes and procedures associated with the Short-Rate Cancellation premium. In short, Plaintiffs fully litigated the case, and gained a complete understanding of all issues in this litigation. Irby Decl. at ¶ 9.

Fourth, the Plaintiffs' probability of ultimate success on the merits supports settlement. The outcome of this case has been uncertain from the outset and remains uncertain today. While Plaintiffs prevailed, in part, on their cross-motion for summary judgment, a jury trial was scheduled to determine damages. Even if Plaintiffs recovered 100% of their damages at trial, PGAC was committed to appealing any verdict and challenging this Court's prior rulings on class certification and summary judgment.[9] If PGAC prevailed on either of those issues on appeal, it would reverse or prevent all relief for the previously-certified class. There is a risk

---

[9] On appeal, a summary judgment Order is subject to *de novo* review. *See Curves, LLC v. Spalding County*, 685 F.3d 1284, 1288 (11th Cir. 2012).

that the Eleventh Circuit could disagree with this Court's holdings and this threat supports approval of the proposed settlement.

Fifth, the range of possible recovery supports the settlement. As noted, the Settlement Agreement provides Settlement Class Members with 100% of the relief requested, plus an additional 5% for interest. Each Settlement Class Member who submits a valid claim will be paid the full amount of its Short Rate Cancellation refund. This represents 100% of the relief requested in the case; it is not a compromise amount that reduces the recovery to any member of the Settlement Class making a valid claim. Finally, the Settlement Agreement requires PGAC to change its practice and procedure in Florida and begin calculating Short Rate Cancellation premium refunds in the manner described in the Settlement Agreement (unless and until there are changes in statutes, regulations, appellate case law, and/or policy terms), such that Florida insureds will receive the benefit of this settlement by receiving these additional payments in the event they voluntarily cancel their insurance with PGAC. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief than likely would have been secured at trial).

Sixth, the opinions of Class Counsel and the class representatives support approval of the settlement.[10] It is the reasoned opinion of Class Counsel, experienced in complex class action litigation, that settlement is in the best interest of the previously certified classes and the Settlement Class, and eliminates the risk of proceeding with litigation. Irby Decl. at ¶ 9. Based on their evaluation, Plaintiffs and Class Counsel have determined that the terms and conditions of the Settlement Agreement are fair, reasonable, and in the best interests of Plaintiffs, the previously certified classes, and the Settlement Class. Likewise, the class representatives agree

---

[10] The sixth factor includes analysis of the substance and amount of opposition, which is irrelevant until after Notice and the opportunity to request exclusion or object is provided.

that the certainty of settlement at greater than 100% value for all claims made and the future benefit to Florida insureds through Defendants' change in business practice significantly outweigh the risk of continued litigation. It is well-settled in this Circuit and District that a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *See, e.g., Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (quotations omitted). Defendants asserted and confirmed they would not settle the case absent the claims made structure. Settlement Agreement at VI(1). Courts find a defendant's refusal to settle absent a claims-made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).[11]

---

[11] Moreover, even if PGAC had been willing to settle on a direct-pay model (it was not), this would surely have meant a significantly lower settlement payment per class member than under a claims-made model in which greater than 100% of requested damages are paid for each claim made. As Magistrate Judge Goodman explained, "[n]egotiating for a smaller amount to go to Class Members would…unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015). Plaintiffs and Class Counsel have insisted that all members of the Settlement Class receive *multiple* notices and repeated opportunities and multiple avenues to submit a claim. Accordingly, it makes no sense to send a significantly smaller amount to all class members, including those who are

The question is not whether a claims-made settlement compares favorably to a hypothetical settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 2014 WL 4120599, at *3 ("[The] Court does not have the authority to impose a preferred payment structure upon the settling parties"); *Lee*, 2015 WL 5449813, at *25 ("a claims-made structured settlement is fair, reasonable, and adequate on its own terms"). Here, the elimination of significant risk in favor of payment of full damages is fair and reasonable.

The Settlement Agreement removes the risk that class members will recover nothing due to an unfavorable ruling on appeal. In exchange for removing such risk entirely, far from accepting a concomitant reduction in the potential damages, the Settlement Agreement provides complete relief. *Id*. (providing near-complete relief on a claims-made basis is "extraordinary" result); *Wilson*, 2016 WL 4570011, at *9 (same). For these reasons, and as will be more fully briefed in the Motion for Final Approval, Plaintiffs respectfully submit that the Settlement Agreement is fair and reasonable.

Finally, to the extent the textual factors outlined in Rule 23(e) do not overlap with the factors prescribed by the Eleventh Circuit in *Leverso*, such factors also weigh in favor of justifying providing Notice of the proposed Settlement to Settlement Class Members. *Cook*, 2020 U.S. Dist. LEXIS 111956, at *16 (explaining that "Rule 23(e)(2) was amended in 2018" to focus on the "core concerns" of Rule 23 but not to "displace…governing law on approval of class action settlements.") (citing Fed. R. Civ. P. 23(e)(2) Committee Notes on Amendment – 2018). Specifically, Rule 23(e)(2)(A)'s "adequacy" requirement, which is "meant to address

---

insufficiently incentivized even by the availability of full damages, at the expense of those willing to take a few minutes (at most) to submit a simple claim. Plaintiffs and Class Counsel believe a diminished settlement value would not have been fairer to class members. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class).

whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses," *id.* at *18, is satisfied for the same reasons as the *Leverso* "stage of proceedings" factor outlined above – the Class Representatives extensively litigated the claims and defenses at issue over a lengthy period of time such that they had full and detailed knowledge prior to engaging in settlement discussions. Moreover, the Fed. R. Civ. P. 23(e)(2)(C)(iii) attorneys' fees analysis, which is distinct from Rule 23(h) and instead "addresses if and how the attorneys' fees impacted the terms of the Settlement," *id.* at *24, weighs in favor of preliminary approval because attorneys' fees and costs have absolutely no impact on the full damages to which Settlement Class Members are entitled. Irby Decl. at ¶ 26. Finally, because Settlement Class Members are treated identically under the terms of the Settlement, Fed. R. Civ. P. 23(e)(2)(D) weighs in favor of settlement as well. *Id*. at *25 (finding this factor was satisfied because, as here, "Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and…the scope of the release.").

As further support for granting preliminary approval of this settlement, Plaintiffs respectfully note that this Court recently granted Final Approval of a class action settlement involving unpaid title transfer fees to insureds where the settlement afforded class members complete relief plus an additional $4.95 plus interest. *See Roth v. Geico General Ins. Co.*, No. 18-cv-61361-WPD, ECF Doc. No. 375.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant Preliminary Approval of the proposed settlement and enter an Order of preliminary approval including the substantive content of the proposed Order attached as Exhibit 1 to the Settlement Agreement. The proposed Order approves the form of notice to be given to the class, establishes a schedule and process for the

submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court (such hearing scheduled to occur so that the order of final approval provides sufficient time to comply with the notice requirements of 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). Plaintiffs will request final approval of the settlement in advance of the fairness hearing.

Respectfully submitted this 19th day of September, 2022.

/s/ J. Matthew Stephens
J. Matthew Stephens (Florida Bar No. 0688649)
James M. Terrell (Admitted *pro hac vice*)
Courtney C. Gipson (Admitted *pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
mstephens@mtattorneys.com
rgm@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

R. Brent Irby (Admitted *pro hac vice*)
**IRBY LAW, LLC**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 936-8281
brent@irbylaw.net

Jordan A. Shaw, Esq.
Zachary D. Ludens, Esq.
**ZEBERSKY PAYNE SHAW LEWENZ**
110 Southeast 6th Street, Suite 2900
Ft. Lauderdale, Florida 33301
Telephone: (954) 361-3134
Facsimile: (954) 989-7781
Jshaw@zpllp.com
zludenz@zpllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 19, 2022, the foregoing *Plaintiffs' Motion Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement* was served via the CM/ECF system on the following:

Reginald J. Clyne, Esq.
Kimare S. Dyar, Esq.
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156

(*Attorneys for Permanent General Assurance Corp.*)

*/s/ J. Matthew Stephens*
OF COUNSEL