IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20-cv-81979-WPD – Dimitrouleas

**DORINE L. CONNOR, and MYRTLE E. PUGH,** Individually and on behalf of all other similarly situated,

    **Plaintiffs,**

v.

**PERMANENT GENERAL ASSURANCE CORP.,**

    **Defendant.**

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Dorine Connor and Myrtle Pugh (together "Plaintiffs"), individually and on behalf of the proposed Settlement Class, respectfully move the Court for final approval of the Class Action Settlement Agreement and Release ("Settlement Agreement"), filed with the Court on September 19, 2022 (ECF No. 146), and preliminarily approved by the Court by Order dated September 20, 2022 (ECF No. 147), and for the entry of a Final Approval Order. In support, they state as follows:

## I. BACKGROUND

### A. The Alleged Underlying Dispute

This lawsuit involves allegations that PGAC breached its insurance policies ("Policy") issued to Plaintiffs and similarly-situated Florida insureds by failing to properly calculate Short Rate Cancellation premium refunds to customers who voluntarily cancelled their insurance policies. The Parties have agreed and understand their Settlement constitutes no admission by

1

either Party regarding the allegations surrounding the Short Rate Cancellation premium or any other wrongdoing or position. Settlement Agreement at § XI.

### B. Litigating the Action

This matter was originally filed by Prinita Finley on October 27, 2020. (ECF No. 1). Finley's Complaint asserted claims against Defendants Permanent General Assurance Corporation ("PGAC") and Nation Safe Driver's Services, Inc. (*Id.*) A Second Amended Class Action Complaint was filed on January 25, 2021, adding Dorine Connor and Myrtle Pugh as parties and asserting claims only against PGAC on behalf of two Florida classes. (ECF No. 37). Finley voluntarily dismissed her claims without prejudice on March 4, 2021. *See* (ECF No. 47). Thereafter, Plaintiffs Connor and Pugh amended their Complaint on July 9, 2021 to add Matthew K. Lancaster, a California resident, to represent a nationwide class and California subclass. (Doc. 67). On November 18, 2021, this Court granted Defendant's Motion to Dismiss, dismissing Mr. Lancaster's claims for lack of personal jurisdiction. (ECF No. 78).

The Parties litigated the Action contentiously and thoroughly. Each Party tested the other's legal theories, claims, defenses, and evidence extensively. *See* (ECF No. 148-1 at ¶¶ 5-9) (discussing history and extensive motion and pretrial litigation). The extensiveness and complexities of the discovery materials produced in turn necessitated that Plaintiffs consult experts. Each Party's exploration of its position in turn led to a thorough review of the strengths and weaknesses of each one's position prior to reaching a compromise of the Action. *Id.*

### C. The Settlement Negotiations

Against this backdrop, settlement negotiations took place formally and were aided by a neutral mediator. The Parties participated in a full day mediation session with experienced mediator Benjamin Newman on August 5, 2022. At the conclusion of the mediation session, a

settlement was reached. After mediation, the Parties participated in countless oral and written negotiations and exchanges of draft agreements, proposed orders, proposed claim forms, and proposed class notices. On September 16, 2022, the Parties executed the Agreement and finalized the exhibits, then Plaintiffs filed them with their unopposed motion for preliminary approval on September 19, 2022. (ECF No. 146).

### D.  Preliminary Approval

The Court preliminarily approved the Settlement on September 20, 2022. (ECF No. 147). The Court found that the Settlement was sufficiently fair and reasonable to warrant notice to the Settlement Class and setting a Final Approval Hearing. *Id*. at ¶ 29. Rather than vacating its prior class certification order, the Court amended the class definition it previously certified to reflect the Settlement Class requested by the Parties and certified the Settlement Class for settlement purposes only. *Id*. at ¶ 4. The Court also approved appointment of the Parties' choice of Claims Administrator, ordered the Notice Program be implemented, approved the Settlement Claim Form, prescribed the objector and Opt-Out requirements, and set dates for the Final Approval Hearing and submissions and Class Counsel's application for attorney's fees.[1] *Id*. at ¶¶ 14-17, 30-35, 38, 40.

### E.  Administrator

The Court's Preliminary Approval Order appointed Angeion Group, LLC ("Angeion"), a nationally recognized class action settlement administrator, to administer the Settlement and implement the Notice Program. *See* ECF No. 147 at ¶ 17.

---

[1] Class Counsel's request for attorney's fees and supporting material were timely filed separately pursuant to the Court's Preliminary Approval Order. *See* (ECF No. 148).

To support this Motion, Plaintiffs submit the Declaration of Lacey Rose re: Notice and Administration Proof of Completion ("Angeion Aff."). The Angeion Aff. provides information about the delivery and completion of the Court's approved Notice Program and responses from Settlement Class Members. *See* **Exhibit 1** hereto.

F. **CAFA Notice**

On September 29, 2022, Angeion compiled and timely delivered the required Class Action Fairness Act ("CAFA") notification materials required by 28 U.S.C. § 1715 to the U.S. Attorney General, the Florida Attorney General and the Florida Office of Insurance Regulation. Angeion Aff. at ¶ 13.

G. **Notice Program**

Angeion implemented the Notice Program under the Settlement as ordered by the Court. Angeion mailed 57,916 Notices (two mailings to Settlement Class Members) and emailed 54,803 Notices (two emails to Settlement Class Members) of the Notice Package in the form approved by the Court to potential Settlement Class Members. Angeion Aff. at ¶¶ 7-10. A copy of the Notice Package that was sent to potential Settlement Class Members is attached as Composite Exhibits A and B to the Angeion Affidavit. *Id*. at ¶¶ 8-9.

Angeion further established a Settlement website, www.ShortRateCancellationSettlement.com ("Settlement Website"), where Settlement Class Members go to review pertinent documents relating to the Settlement and submit claims electronically. The home page contains a summary of the Class Notice and Important Dates. It also provides links to Frequently Asked Questions, Important Documents (including the Preliminary Approval Order, Settlement Agreement and Release with exhibits, Class Counsel's motion for attorney's fees, the electronic Claim Form submission page, and the contact email, toll-

4

free number, and address for contacting Angeion. The Settlement Website will remain in service, and has been updated as necessary, through the end of settlement administration, which is on-going.

Angeion provided its mailing address to receive correspondence from Settlement Class Members concerning the proposed Settlement, including Opt-Out exclusion requests and paper Claim Forms. Angeion will continue to receive Settlement Class Member correspondence and respond as appropriate through final administration of the Settlement. And Angeion established and maintained a toll-free telephone system containing recorded answers to frequently asked questions and options to speak to representatives directly. This telephone number was provided to Settlement Class Members in the Class Notice and is identified on the Settlement Website. The deadline to submit claim forms is February 20, 2023.

### H. Opt-Out Requests

Angeion only received 1 Opt-Out Request and it was untimely. The name of the Settlement Class Member who submitted this untimely Opt-Out Request is attached as an Exhibit to the Angeion Affidavit. *See* Angeion Aff. at ¶ 17.

### I. Objections and Notices of Intent to Appear at Final Approval Hearing

Angeion did not receive any Objections to the Settlement (including Plaintiff's Motion for Attorney's Fees) by the December 19, 2022 deadline. Angeion Aff. at ¶ 18. No Objections to the Settlement were filed with the Court.

### J. Final Approval Order

Class Counsel intends to provide a Proposed Final Approval Order prior to the Final Approval Hearing but believes it is prudent to incorporate the Magistrate Judge's Report and Recommendation on Plaintiffs' Unopposed Motion for Attorneys' Fees and Reimbursement of

Litigation Expenses (ECF No. 148) into the Proposed Final Approval Order if the Report and Recommendation is entered prior to the Final Fairness Hearing.

The Preliminary Approval Order states that if the proposed settlement is approved, any Settlement Class Member who is not deemed by the Court as having submitted a valid Opt-Out Request complying with the Preliminary Approval Order requirements and the Class Notice shall be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments in this Action.  *See* (ECF No. 147 at ¶ 32).

## II.  MEMORADUM OF LAW

### A.  Class Certification

The Parties request that the Court finally certify the Settlement Class for settlement purposes only under Federal Rule of Civil Procedure 23.  No changes have occurred since the Court's prior certification ruling that would warrant departing from the Court's prior findings that the Settlement Class meets all of elements of Rules 23(a) and 23(b)(3) for settlement purposes.

### B.  The Parties Provided the Best Notice Practicable under the Circumstances.

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007).  Federal Rule of Civil Procedure 23(c)(2) requires that notice to Settlement Class Members be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F. 3d 1294, 1321 (11th Cir. 2012). Instead, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314 (1950*); see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, the Notice Program including the multiple avenues of notice and content of the Class Notice satisfied Rule 23 and due process requirements. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261-62 (S.D. Fla. 2016). PGAC provided Angeion email addresses and mailing data to identify and send, via USPS First Class Mail, Notice Packages to the 30,490 potential Settlement Class Members. *See Janicijevic v. Classica Cruise Operator, Ltd*., No. 20-CV-23223, 2021 WL 2012366, at *2-3 (S.D. Fla. May 20, 2021) (finding due process met through First Class Mail notice); *Adams v. Southern Farm Bureau Life Ins. Co.,* 493 F. 3d 1276, 1287 (11th Cir. 2007); *Braynen v. Nationstar Mortgage, LLC*, 14-CV-20726, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015).

Notice was further afforded through the Settlement Website, which included relevant important documents, online claims submission, FAQs, a schedule of important dates, the long form notice, a toll-free number with an opportunity to speak to live operators, and a mailing address where Settlement Class Members could learn more and submit claims. *See Janicijevic*, at *2-3; *Braynen,* at *6; *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014).

The Notice Package and the Settlement Website gave Settlement Class Members all information reasonably necessary to make decisions whether to remain in the Settlement Class and be bound by the final judgment or opt out, and whether to object to any aspect of the Settlement. *See Faught*, 668 F.3d 1233, 1239. The Class Notice defines the Settlement Class; describes the allegations of the operative complaint; informs Settlement Class Members of their right to opt-out and object, the procedures and deadlines for doing so, and the time and place of the Final Approval Hearing; informs Settlement Class Members of their rights to enter an appearance through their

own counsel, if they desire; describes the attorney's fees being sought by Class Counsel including the amount; tells them how to submit a claim for Settlement Benefits and the deadline for doing so; notifies them that a final judgment would bind them unless they opt out; and tells them how and where they can obtain more information including a toll-free number and the Settlement Website, which contain, inter alia, a full copy of the Settlement Agreement with all exhibits and Class Counsels' fee motion. The best practicable notice has been provided and due process is satisfied.

### C. The Settlement is Fair, Reasonable, and Adequate.

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Perez*, 501 F. Supp. 2d at 1379 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[2] A court's determination of these questions should be informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Janicijevic*, 2021 WL 2012366, at *3 (citations omitted); *accord Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations omitted).

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

"Under Rule 23(e)(2), settlements may be approved if the Class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C)." *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *7 (S.D. Fla. July 13, 2021). These Rule 23(e)(2) factors are essentially subsumed by the six factors the Eleventh Circuit has identified (in addition to the absence of fraud or collusion) that a district court should examine when assessing whether a proposed settlement is fair, adequate, and reasonable. *Id.*, at *7-8. These factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. "In evaluating these considerations, the district court should not try the case on the merits." *Behrens*, 118 F.R.D. at 539 (citing *Cotton*, 559 F.2d at 1330). Rather, "the district court may rely upon the judgment of experienced counsel for the parties…[and] [a]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (citing and quoting *Nelson* and *Cotton*) (internal quotations marks omitted). And "where the settlement previously has been preliminarily approved, the settlement is presumptively reasonable." *Terazosin Hydrochloride Antitrust Litig., In re*, No. 99MDL1317SEITZKLEIN, 2005 WL 2451960, at *5 (S.D. Fla. July 8, 2005).

The Court has already granted the Settlement preliminary approval, finding it sufficiently reasonable to warrant notifying Settlement Class Members. Nothing has changed that would alter this finding. *See Gonzalez v. TCR Sports Broad. Holding, LLP*, 1:18-CV-20048-DPG, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019). Based on these factors, the Parties, through experienced

9

class counsel, respectively submit that the Court should finally approve the Parties' Settlement and enter the proposed Final Approval Order.[3]

### 1. *There was no fraud or collusion, and the Settlement was negotiated at arm's length.*

"In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) (citing *Bennett*, 737 F.2d at 987 n. 9).

Here, the record and the history of the case demonstrates that there was no fraud or collusion regarding the Settlement and that it was negotiated at arm's length. The Short Rate Cancellation premium dispute, resolved here globally, has been contentiously and zealously litigated since 2020. *See* ECF No. 1, No. 80, No. 86. The Parties executed the Settlement Agreement after almost two years of litigation and reached the settlement during a mediation session presided over by an experienced mediator. *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (finding an absence of collusion where settlement was reached with some assistance of a well-qualified, experienced mediator).

Settling this matter was far from easy. Among experienced counsel from both sides, there were countless oral and written negotiations and several exchanges of versions of draft agreements, proposed orders, claim forms, proposed notices. During this process, importantly, attorney's fees

---

[3] This proposed order is in a format similar to other orders in this district. *See, e.g.,* ECF No. 218-2; *Cortazar v. CA Management Services Parent*, No. 19-cv-22075-UU, 2020 WL 12574800 (SD. Fla. Mar. 13, 2020); *Diaz v. HSBC USA, N.A*., No. 1:13-CV-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014).

were not negotiated until after substantiative relief to the Settlement Class was fully agreed. *See* (ECF No. 148-1 at ¶ 11); *see also Ferron*, 2021 WL 2940240, at *8 (mentioning negotiation of fees after class relief as a fact that indicates that the settlement was non-collusive and reached at arm's length). There was no fraud or collusion regarding the Settlement and it was negotiated at arm's length.

### 2. *The fairness, reasonableness, and adequacy of the Settlement in light of the range of recovery favors final approval of the Settlement.*

The proposed Settlement is reasonable, fair, and adequate because it provides substantive and complete monetary relief to Settlement Class Members without requiring Settlement Class Members to risk the time, delay, and recovery inherently present in litigating a case to trial. *See Saccoccio*, 297 F.R.D. 683, 693 ("The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial."); *Ferron*, 2021 WL 2940240, at *10 (combing *Bennet* factors two and three).

Here, the Settlement provides Settlement Class Members with Settlement Benefits that are clearly fair and adequate compensation compared to what they might have been at trial and then some. Pursuant to the Settlement, Settlement Class Members are eligible to make claims for **100%** of the refund due on their Short Rate Cancellation premiums. Settlement Agreement § V at ¶ 2. They may also receive an additional 5% in interest. *Id.* at ¶ 6. The Settlement value of just the cash portion of the Settlement made available to the Settlement Class is estimated by Class Counsel to be $2,835,000. Settlement Agreement, § V at ¶ 6; *see also Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014) (if notice is adequate, relief made available through settlement (rather than actually claimed) is the proper focus).

11

Settlement Class Members may claim and receive payment more readily and easily and for more benefit than if the Settlement had not been reached. The Settlement calls for a liberal and fair claims process that is streamlined and simple. *See Poertner v. Gillette Co.* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *see also Ferron*, 2021 WL 2940240, at *4 (S.D. Fla. July 13, 2021) (approving settlement providing relief based on submitting a "valid Claim Form"); *Janicijevic*, 2021WL 2012366, at *6; *Williams v. Reckitt Benckiser LLC,* 20-23564-CIV, 2021 WL 8129371, at *20 (S.D. Fla. Dec. 15, 2021). The Claim Form simply requires a Settlement Class Member to affirm Settlement Class membership and his or her identity, to sign the Claim Form and to deliver the Claim Form electronically via the Settlement Website or through the mail. *See* Settlement Agreement § VI at ¶¶ 3-4. Settlement Class Members have a cure procedure if their Claim Forms are deficient in some material respect. Settlement Agreement § VII at ¶ 1.

In addition, the Class Notice and administration process are paid for entirely by PGAC under the Settlement, which otherwise would likely be paid by Plaintiffs and later deducted from any recovery won for the class. Settlement Agreement § IV at ¶ 1. The Settlement also provides for injunctive relief on a going forward basis whereby the PGAC will calculate short rate cancellation premiums using the methodology adopted by the Settlement Agreement. Settlement Agreement § XII; *see Ferron,* 2021 WL 2940240, at *11 (noting value of programmatic relief); *Janicijevic*, 2021WL 2012366, at *6 (same).

Moreover, subject to Court approval, PGAC will pay Class Counsel's attorney's fees and costs of not more than $950,000.00, which were negotiated separately from Settlement Benefits and which will in no way reduce any payments or relief to Settlement Class Members and which if the case went to trial would likely have been deducted from any recovery for the class. Agreement § VIII at ¶¶ 2-3; *see also* ECF No. 148 (Plaintiffs' motion for attorney's fees). These

benefits are exemplary and well within the range of what would be considered fair, reasonable, and adequate relief considering the risk of continued litigation, absent a class settlement.

### 3. Likelihood of Success at Trial

The case was far from certain when filed. Since the inception of this class action and before, PGAC continually disputed Plaintiffs' interpretation of the Policy and short rate cancellation premium refund, class certification, and any alleged wrongdoing or liability of any kind. Interpretation of the Policy had been mixed or unclear was far from settled. For example, a Georgia state court previously granted PGAC's motion for judgment on the pleadings. *See* ECF No.108-1.

Throughout the case, PGAC also raised defenses, which the Settlement waives; however, PGAC would likely revive and assert those defenses at trial given that the Agreement preserved those defenses for PGAC should the Settlement not be approved for any reason. The Settlement finally and globally settles the short rate cancellation premium issue for PGAC's Florida insureds and avoids all the uncertainties and obstacles and any further delay owing to potential further litigation and appeals relating to liability or class certification.

### 4. The expense, duration, and complexity of the Action, and the stage it was settled, favor final approval.

This Action was significantly developed, so the Parties and counsel knew the strengths and weaknesses of their positions sufficiently enough to enter a reasonable settlement. *See Carter v. Forjas Taurus S.A.*, No. 1:13-CV-24583-PAS, 2016 WL 3982489, at *9 (S.D. Fla. July 22, 2016). The issues in this case were thoroughly litigation through dispositive motions and class certification before it was settled after the pretrial process was essentially over. *See Wilson*, 2016 WL 457011, at *7 (noting litigation for one year to be sufficient time).

During this time, each Party engaged in extensive investigation and discovery. Plaintiffs served multiple sets of discovery requests, interrogatories, and requests for admission. *See* ECF No. 148-1 at ¶ 6). PGAC produced, and counsel for Plaintiffs reviewed and cataloged, over 1,500 pages of documents produced and more than 8.3 million data inputs. *See id.* The parties took depositions, including the depositions of the class representatives and a corporative representative of PGAC. *Id.* All of the foregoing gave each side more than "sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016 WL 457011, at *7.

### 5. *The positive reaction to the Settlement favors final approval of the Settlement.*

Finally, the reaction to the Settlement has been overwhelmingly positive, which strongly supports final approval. *See Gonzalez*, 2019 WL 2249941, at *5. Angeion received no objections to any aspect of the Settlement from any of the potential 30,490 Settlement Class Members. *See Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *7 (S.D. Fla. Oct. 1, 2020) (noting lack of objections weighs strongly in favor final approval). Nor has any governmental authority intervened or objected. Only 1 Opt Out was submitted to the Settlement Administrator and it was untimely. *See Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (finding low opt-out rate weighs in favor of final approval).

## CONCLUSION

WHEREFORE, considering the extensive substantial benefits of the proposed Settlement, the extensive Notice Program, the risks of the action proposed to be settled, the overwhelmingly positive reaction of the Settlement Class, and the legal standards detailed herein, the proposed Settlement terms are such that the Court can easily conclude they are "fair,

reasonable, and adequate." For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement.

Respectfully submitted this 10th day of January, 2023.

*/s/ J. Matthew Stephens*
J. Matthew Stephens (Florida Bar No. 0688649)
James M. Terrell (Admitted *pro hac vice*)
Courtney C. Gipson (Admitted *pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mtattorneys.com
rgm@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

R. Brent Irby (Admitted *pro hac vice*)
**IRBY LAW, LLC**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 936-8281
brent@irbylaw.net

Jordan A. Shaw, Esq.
Zachary D. Ludens, Esq.
Zebersky Payne Shaw Lewenz
110 Southeast 6th Street, Suite 2900
Ft. Lauderdale, Florida 33301
Telephone: (954) 361-3134
Facsimile: (954) 989-7781
Jshaw@zpllp.com
zludenz@zpllp.com

*Attorneys for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this day, January 10, 2023, the foregoing *Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law* was served via the CM/ECF system on the following:

Reginald J. Clyne, Esq.
Kimare S. Dyar, Esq.
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156

(*Attorneys for Permanent General Assurance Corp.*)

/s/ J. Matthew Stephens
OF COUNSEL